STATE OF IOWA ex rel. FRANK W. DUSEY et al., Appellant, v. CRESTON MUTUAL TELEPHONE COMPANY, Appellee.

APPEAL AND ERROR: Harmless Error—Premature Withdrawal of
1  Jury Issue. The premature withdrawal of an issue from the jury becomes inconsequential when, at the close of all the evidence, only law issues remain.

ELECTIONS: Conduct of Elections—Illegal Handling of Ballots. An
2  election will not be invalidated on the mere showing that unauthorized parties handled and counted the ballots in the immediate presence of the election officials. Prejudice, express or implied, must be made to appear.

**QUO WARRANTO:** Costs—**Unauthorized Private Parties.** Costs should
3   not be taxed, in quo warranto proceedings, to private parties whose
names appear in the title to the proceedings, when the record af-
firmatively shows that the proceeding was instituted by the county
attorney.

*Appeal from Union District Court.*—P. C. WINTER, Judge.

FEBRUARY 13, 1923.

REHEARING DENIED JUNE 22, 1923.

QUO WARRANTO, to test the legality of a franchise granted
appellee at the general election held in the city of Creston,
November 2, 1920. The case was tried to a jury; but, at the close
of the plaintiff's evidence, upon motion of appellee, the issues
were withdrawn from the jury, and, after the introduction of
defendant's testimony, the court dismissed plaintiff's petition.
Plaintiff appeals.—*Modified and affirmed.*

*E. L. Carroll,* County Attorney, and *Frank Wisdom,* for
appellant.

*L. J. Camp,* for appellee.

STEVENS, J.—Creston, a city of 8,000 people, is divided into
five wards. At the general election held on November 2, 1920,
a proposition to grant a franchise to appellee for the use of the
streets of said city was voted upon. The proposition carried by
a majority of 19. Omitting the vote of the second ward, which
is challenged by appellant, there was a majority against the
proposition of 44. Briefly stated, the record, without serious
dispute, shows that George Atkinson, general manager of ap-
pellee, Henry Tramp, a stockholder, J. W. Stratton, and others
visited the polling place in the second ward some time after the
polls had been closed, and while the judges and clerks were
engaged in counting the ballots. The ballots being counted had
been deposited in a separate ballot box from the one used for
the franchise ballots. Upon inquiry of the judges, Atkinson and
those with him were informed that the franchise ballots could
probably not be counted until the following day; whereupon

the box containing these ballots, which was unlocked, was opened, and Tramp removed the ballots, and separated them from those voted on a proposed constitutional amendment. They then proceeded to count the franchise ballots. This, according to some of the witnesses, was done by separating the ballots and placing them on the table in two piles, those in favor of the proposition in one, and those opposed in another. All of the ballots were counted in this way. Stratton, one of the parties engaged in counting the ballots, had had experience as a judge of election. A tally of the vote was preserved. Several other citizens were present in the room while the ballots were being counted. The officers in charge of the election did not affirmatively consent to permit Atkinson, Tramp, and others to count the ballots, but one of the judges did place the ballot box where they could have access to it, and all were present and knew what was being done. The election officers occupied seats inside a rail near the center of the small room in which the election had been held. The ballots, as they were counted, were laid on an improvised table inside, or on, the rail surrounding the election officers. The result of the count by Atkinson and others was announced when completed. Later, the ballots were counted by one or two of the judges and two of the clerks, and a tally sheet made. The ballots were not read by the judges and the result announced in the usual way, but, so far as the evidence shows, each of the officers counting the ballots arrived at the same result. No affirmative claim is made by appellants that the ballots were not sealed and returned to the proper officer by the judges. The poll book was offered in evidence, as was also the official certificate of the judges of the election.

It is not claimed by appellant that the number of votes cast for and against the proposition in the second ward, as returned by the election officers, is not in accordance with the marking shown on the ballots. The offer in evidence of the poll book and certificate of the judges of the election was objected to by appellants upon the ground that there was such irregularity and illegality in the counting of the ballots as to render them inadmissible in evidence. No fraud is charged.

I. As stated, a jury was impaneled; but, upon motion of appellee, at the close of appellant's evidence, the issues were

withdrawn therefrom, and the evidence of defendant was then

introduced. The right of appellant to a jury

1. APPEAL AND ERROR: harmless error: premature withdrawal of jury issue.

trial is not raised. Perhaps the ruling on the motion was premature, but the record, as finally made up, shows that the ruling was without prejudice. While there are minor conflicts in the testimony, only questions of law are presented for decision.

II. The legislature has made ample provision for securing fair elections, and for the protection of the ballots after they have been cast. Section 4927 of the Code makes it a serious

2. ELECTIONS: conduct of elections: illegal handling of ballots.

offense for any judge or clerk of election to permit any ballot to be removed from the ballot box in any other manner than that provided by law. Clearly, there was an irregularity on the part of the election officers in counting the franchise ballots,—at least, they were not counted in the usual manner; but this irregularity could not have been prejudicial. The result was wholly unaffected thereby. This being true, the election was not thereby vitiated. *State v. Birdsall*, 186 Iowa 129; *Younker v. Susong*, 173 Iowa 663; *State v. Lockwood*, 181 Iowa 1233; *Chambers v. Board of Directors*, 172 Iowa 340; *Kinney v. Howard*, 133 Iowa 94; *Independent Sch. Dist. v. Independent Sch. Dist.*, 153 Iowa 598.

It was both irregular and illegal for the election officers to permit interested and unauthorized parties to remove the franchise ballots from the box and count them. However good may have been their intentions, their conduct cannot be approved. It is to be hoped that similar conduct will be avoided by all election boards in the future. In the absence, however, of some affirmative showing, or of such circumstances as that an inference may be drawn that the ballots were tampered with by Atkinson and his companions, or of fraud upon the part of the election officials, the conclusion necessarily follows that prejudice is not shown. There is not a scintilla of affirmative evidence that the ballots were marked in any way; that any were extracted or mutilated or substitution made; that they were tampered with in any way, except that they were removed from the box and counted by the parties named; or that any attempt was made to affect the result. All that transpired was in the pres-

ence of the election officers, who were near by, and of other citizens not interested in favor of appellee, or who were hostile to the franchise proposition. So far as shown, the parties who counted the ballots were moved only by their eagerness to ascertain as quickly as possible the result of the election. The ballots were at no time out of the custody of the election officials, and the counting was done with full publicity. So far as anything appears in the record to the contrary, the ballots could have been produced in court for examination. This court has repeatedly emphasized the duty of election officers and those to whose custody the ballots are confided after the election. *Furguson v. Henry*, 95 Iowa 439, 446; *Davenport v. Olerich*, 104 Iowa 194; *DeLong v. Brown*, 113 Iowa 370; *Mentzer v. Davis*, 109 Iowa 528, 530; *Murphy v. Lentz*, 131 Iowa 328, 329.

All of the above cases, which are cited and relied upon by appellants, involve election contests in which the question of the admissibility of the ballots in evidence because of improper preservation was the point in issue. The appellant did not, in the case at bar, offer evidence to show that the ballots were improperly preserved, or that they were tampered with after they were delivered by the judges to the proper officer, so as to render them inadmissible in evidence. The point urged is that there was such illegality on the part of the election officers as to render their certificate inadmissible in evidence, and to wholly vitiate the election in the second ward. Granting that the doctrine of the cited cases is sound, and that such is the law of this state, they are not decisive of the exact question before us. If the election was fairly held and the ballots correctly counted, they express the will of the electors of the city of Creston. This is the end aimed at. Every intendment of the legislature and every safeguard provided thereby for the securing of a fair election and the preservation of the ballots should be observed by election officers, and must be upheld by the court; but the clearly expressed will of the voters should not be thwarted or set aside by the courts because of irregularities and even illegalities which are not shown to have in any way affected the result or to have prejudiced anyone. Cases cited by counsel from other jurisdictions, perhaps, go somewhat further in invalidating elections than we have gone. We are firmly committed to the

rule that prejudice must be shown. It is hardly possible that a fraud could have been perpetrated by those who counted the ballots in the presence of the judges and clerks of election and the others present, without immediate detection. It is true that the judges and clerks were also busy, but the parties engaged in counting the franchise ballots were near by and in plain sight.

III. The court below taxed the costs to Dusey and Dunlap, who are named in the title, but who were not authorized by the court to prosecute this action. Section 4318 of the Code provides that an action in quo warranto may be brought upon the relation of a private individual, that fact being stated in the petition, and that the court may in its order allow him to prosecute, provided that he may be required to pay the costs, unless successful in the prosecution. Code Section 4316 provides that, if the county attorney, on demand, neglects or refuses to commence the action, it may then be prosecuted in the name of any citizen, permission being first obtained from the court in which the action is to be commenced, or the judge thereof.

*3. QUO WARRANTO: costs: unauthorized private parties.*

It is not alleged in the petition that the action is prosecuted by Dusey and Dunlap, but it appears therefrom that it was commenced by the county attorney, Frank Wisdom appearing with him. The costs should not, upon the record before us, have been taxed to the parties named. The judgment below should be modified so as to provide for the taxation of the costs to the proper party.

It follows that the judgment and decree of the court is modified as to costs, and the cause remanded for the proper taxation thereof. In all other respects, the judgment is affirmed. —*Modified and affirmed.*

PRESTON, C. J., WEAVER and DE GRAFF, JJ., concur.