**Elmer F. WESTPHAL, Appellee,**

v.

**CITY OF COUNCIL BLUFFS, Iowa, Appellant.**

**No. 61801.**

Supreme Court of Iowa.

Feb. 21, 1979.

Michael J. Winter, Council Bluffs, City Atty., for appellant.

Douglas S. Lash, of Porter, Lash, Reilly & Tauke, and Robert C. Heithoff, of Heithoff & Pratt, Council Bluffs, for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McCORMICK and LARSON, JJ.

LARSON, Justice.

Plaintiff Elmer F. Westphal, former city clerk of Council Bluffs, brought an action against the city for lost compensation, based upon alleged wrongful removal from office by the city council. The jury returned a verdict in his favor for actual and punitive damages, and the city appeals. We reverse the trial court.

The facts are largely undisputed. Westphal had originally been appointed for a term commencing August 2, 1963. He was reappointed several times pursuant to § 368A.1(1), The Code. (This section was replaced by § 372.13(3) which gave the city authority to establish its own ordinances with respect to appointments as a part of its home rule powers.) Section 368A.1, The Code, provided, before its repeal in 1975, that:

In all municipal corporations, except when otherwise provided by laws relating to a specific form of municipal government, the council shall:

1. *First meeting.* After taking office, assemble, organize and appoint a clerk.

Westphal was reappointed pursuant to that section in January of 1964, 1966, 1968 and 1970. He prepared a resolution for reappointment for 1972 and presented it to the council, but for some reason no action was taken on it.

During all of Westphal's tenure, the city also had an ordinance covering appointment of a clerk. It provided in relevant part:

1.20.010 Appointment—Term of Office —Bond. The City Clerk shall be elected by the City Council on the first *Monday* in April of each even numbered year, or as soon as practicable thereafter, and he shall hold office for the term of two years from the first Monday in April *and until his successor has been elected and qualified.* Before entering upon the discharge of his official duties he shall subscribe to an oath and shall execute and file a bond to the City of Council Bluffs, Iowa. . . . (Emphasis added.)

The ordinance differed from the appointment provisions of § 368A.1 in respect to the time for appointment and in providing for "holding over" of the incumbent until the election and qualification of his successor. Whether it was because of the general principle that a state statute has priority over a conflicting local ordinance, or for some other reason, the clerk appointments expressly made by the council during Westphal's tenure were under the statute, until October 18, 1976, when the council held its election under the ordinance. No one contests the applicability of the ordinance here. No clerk was appointed by resolution at either the January organizational meeting (as required by § 368A.1(1), The Code) or on the first Monday of April (as required by the ordinance) for the years 1972, 1974 or 1976. Despite the lack of a formal appointment of a clerk in 1976, the council appropriated and paid his salary as a part of its budget, and on August 2, 1976, provided a five percent salary raise for him. He performed the duties of clerk at all times since his original appointment in 1963 until October 18, 1976, when the election in question was held.

Approximately a week before the election, Councilman Lewis "discovered" the dormant ordinance requiring election of a clerk. He met with two other councilmen just prior to the regularly scheduled council meeting and discussed the matter. The election of a clerk was not on the agenda for that meeting, but was brought up by Lewis after a motion for adjournment. The council voted, 3–2, to appoint Westphal's deputy as clerk. This lawsuit followed.

Westphal contends the council's action was illegal and was prompted by personal problems between Lewis and himself and allegedly fueled by the prior candidacy of Westphal's son for a council post. He claimed the election held on October 18 was illegal in that it was not "as soon as practicable" after the first Monday in April as required by the ordinance, that by the council's actions in treating him as clerk, paying

his salary and granting him a raise, they had confirmed or ratified his appointment for a term from the first Monday in April, 1976, to the first Monday in April, 1978, which would have been the term of an appointment made under the ordinance.

These are the issues considered on appeal. Other issues were raised by the city as to the applicability of § 613A.4(3), The Code, (Municipal Tort Claims Act) and whether the city could be required to pay for the services which would have been rendered by plaintiff after the election when it had already paid for the services rendered by his successor. We need not reach these issues because of our disposition of the case under the first two issues.

I. The jury was instructed that for plaintiff to recover he was required to show he had a "right" to the office of clerk for the period after the October election, until the first Monday of April, 1978, when the council would make an appointment. The city contended in its motions for directed verdict and for judgment notwithstanding the verdict that he had no "right" to the office during that period, as a matter of law.

Westphal contends he was, in effect, appointed for the period in question by the actions of the council, and that his term was not merely until the election and qualification of a successor, but extended for the same period as for a clerk formally appointed under the ordinance. The city contends he was a "holdover" officer, not reappointed by the council expressly or by implication, and his tenure was extinguished upon the qualification of the successful candidate at the October 18 election. (Westphal contends the issue of holding over is not properly in the case, because a pleading amendment raising it was not allowed by the trial court. However, he had claimed a "right" to the office and this was denied in the city's answer. A status of holdover, or a lack of it, is necessary here to determine Westphal's right to the office and was properly at issue even without the amendment.)

There is no issue raised here as to the fact Westphal was in all respects acting as city clerk from his original appointment until October 18, 1976. The key issue is what his status was for the period between the election and the April, 1978, appointment required by the ordinance. In claiming holdover status of the plaintiff, the city relies upon the ordinance set out above, specifically providing therefor. It is doubtful, however, whether that ordinance is applicable here as to plaintiff. It is conceded that all of his former appointments were made under § 368A.1(1), The Code, and that the ordinance, being in conflict with it, was not used until home rule became effective on July 1, 1975, which was after his last formal appointment. Section 368A.1(1) did not provide for holding over; however, § 69.1, The Code, did. It provided that:

Except when otherwise provided, every officer elected or appointed for a fixed term shall hold office until the successor is elected and qualified, unless he resigns, or is removed or suspended, as provided by law.

The holdover principle is relevant here in two respects: it establishes Westphal's right to hold the office even after his regularly appointed term, which expired in January of 1972, and also his right to hold over after the October, 1976, election, if it was illegal. *See Leslie v. Barnes*, 201 Iowa 1159, 208 N.W. 725 (1926) (illegal election; incumbent school board members held over).

A similar case on its facts is *Downing v. Cree*, 195 Iowa 57, 190 N.W. 36 (1922), in which H. C. Brown was elected as a superintendent of schools on the first Tuesday of April, 1918, pursuant to statute, for a term of three years commencing September 1, 1918. Another election was to be held on the first Tuesday of April, 1921, but the auditor failed to call it. The court said, "[t]hereupon, H. C. Brown qualified as a hold-over officer," and further that:

We have here the situation of no election's being held on the first Tuesday of April, 1921, and consequently, no successor to Brown elected. Brown was elected for three years, and as provided by [code sections] . . . "until his successor is

elected and qualified." No successor to Brown was elected on the first Tuesday of April, 1921, and hence there was no successor to qualify. Brown having qualified as a hold-over officer, no vacancy existed in the office.

.    .    .    .    .

It will be observed that the "vacancy" mentioned was filled by operation of the statute providing for requalification of the incumbent as a hold-over officer. In other words, it was a vacancy filled by the incumbent's becoming a hold-over officer by requalification, *until a successor should be elected at the next general election.* 195 Iowa at 59–61, 190 N.W. at 37–8. (Emphasis added.)

The *Downing* case establishes these principles applicable here: (1) An incumbent officer immediately becomes a holdover officer upon expiration of his term. It does not require any affirmative act of the appointing body, acquiescence by it, or appointment by implication; it is automatic, by operation of law. (2) The tenure of a holdover officer is not necessarily equal to a term of a regularly appointed officer. In other words, Brown did not, by holding over after the April election date, become vested with a three-year term expiring in April of 1924, but only until the next general election, and subsequent qualification of his successor. This is in accord with the general rule, which is that "when the rights of the successor vest those of the incumbent [holdover] terminate." 63 Am. Jur.2d, Public Officers and Employees § 159, p. 726.

Westphal claims more than the status of a holdover officer, however. He claims to be an appointee of the council, despite the fact there was no formal appointment made since 1970. The basis for this claim is that the council ratified or confirmed his appointment for the 1976–1978 term.

An appointment of a public officer requires an open, unequivocal act evidencing it. *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 156, 2 L.Ed. 60 (1803). In addition, it must be made in strict compliance with the statute or constitution granting the power to appoint. *See* 63 Am.Jur.2d Public Officers and Employees § 99, p. 692; 67 C.J.S. Officers § 40, p. 310.

Section 364.3, The Code, provides that: [a] city council shall exercise a power only by the passage of a motion, a resolution, an amendment, or an ordinance.

The city council in this case did not "appoint" Westphal by an open, unequivocal act nor by the passage of any motion, resolution or ordinance as required by the code section above.

Westphal concedes this, and the jury was so instructed by the court, which stated in Instruction 9 that:

You are instructed that there is no evidence in this case tending to show that Plaintiff was expressly appointed to the position of City Clerk for the two year term expiring in April of 1978. However, you are instructed that an appointment to the City office by the City Council of Defendant need not be made by a formal pronouncement on the part of the City Council.

An appointment to City office can result from any actions by the City Council which tend to show approval, confirmation or ratification of the present holder of such office to continue in that position. If you find from the evidence that Defendant, acting through its City Council, and prior to October 18, 1976, confirmed or ratified the position of Plaintiff as City Clerk for term commencing in April, 1976, and ending in April, 1978, then you would be entitled to find that Plaintiff would have a legal right to hold the position of City Clerk for the term of office from April of 1976 through April of 1978, regardless of the fact that no formal appointment had been made therefor.

To establish his claim of appointment by ratification, the plaintiff relies upon an early Iowa case, *McMahon v. City of Des Moines,* 232 Iowa 240, 4 N.W.2d 866 (1942). This case concerned a power of appointment which rested in the head of a city department, subject to council approval. The court held that the semi-annual appro-

priation of his salary by "the council . . confirmed and ratified the appointment." *McMahon, supra,* 232 Iowa at 242, 4 N.W.2d at 867.

However, *McMahon* is distinguishable on two important bases: (1) it was a case involving council power of confirmation of an appointment made by another person, while this case involves the act of appointment itself; and (2) this case involves a holdover officer whose rights and limitations are clearly established by existing law.

A confirmation of an appointment to a public office is to be distinguished from the appointment itself, for in confirming the appointment the senate or other body does not in any sense choose the appointee. 63 Am.Jur.2d, Public Officers and Employees § 110, p. 697.

*See also,* 67 C.J.S. Officers § 42, p. 312.

A confirmation is said not to be even legislative in character, and that:

[c]onsequently, such confirmation may be made as well at a special as at a regular session, and it is immaterial for what purpose the legislative body may have been called in session, for whenever that body is lawfully convened for legislative purposes, it has the right to act for *administrative* purposes, even without mention of such purposes in the call for a special session. 63 Am.Jur.2d, *supra* at pp. 697–8. (Emphasis added.)

It is clear that less formalism is required for a confirmation than for an appointment. We need not decide whether the city council's actions here were sufficient to establish a confirmation or ratification of a conditional appointment already made, because that is not the issue here. We are not here confronted with the exercise of the power of confirmation, but rather with the exercise of the power of appointment. An actual appointment is required to be attended by unequivocal actions by the council in the exercise of its power of appointment, and not by merely recognizing or accepting the status of a person claiming an office.

The city's "City Clerk" ordinance recognizes the distinction between appointment and confirmation. Section 1.20.010 provides for appointment of the clerk by the council; section 1.20.070 provides for council "confirmation" of appointments of deputy clerks made by the clerk.

The plaintiff here attempts to apply the confirmation precedent of *McMahon* to the appointment matter now at hand. The two concepts are different, and that case is distinguishable on that basis.

In addition, *McMahon* did not involve a holdover officer, as to which principles of law are well established. A provision for holding over is effective where there is a failure to hold an election, *Downing v. Cree, supra*; 63 Am.Jur.2d, Public Officers and Employees § 159, p. 726. It also applies if an election is invalid. *State ex rel. Hogle v. Smith,* 94 Iowa 616, 620, 63 N.W. 453, 455 (1895). Here, Westphal was a holdover officer under the provisions of § 69.1, The Code, from the date of the council's organizational meeting in January, 1972, until the qualification of his successor, following the October 18, 1976 election. The election matter presents the second issue.

II. Westphal contends that the October 18th election was illegal, so he was never legally replaced, even if he was only a holdover.

The ordinance required an election on the first Monday of April, "or as soon as practicable thereafter." The jury was so instructed, and we assume from its verdict that they found the election was not held in accordance with the ordinance because it was not held "as soon as practicable" after the first Monday in April.

█ Even assuming that the election was not timely, however, it does not necessarily follow that it was "illegal" nor that the results were void. *See State ex rel. Dusey v. Creston Mut. Tel. Co.,* 195 Iowa 1368, 1372, 191 N.W. 988, 990 (1923), where we said in an analogous case that:

The clearly expressed will of the voters should not be thwarted or set aside by the courts because cf irregularities, and even illegalities, which are not shown to have in any way affected the result or to have prejudiced anyone.

*See also Eastern Iowa Cablevision, Inc. v. City of Iowa City*, 272 N.W.2d 413, 416, n.1 (Iowa 1978).

Plaintiff did not plead nor prove that any prejudice resulted from the late holding of the election. He did complain about lack of notice and opportunity to prepare for the election, being "caught completely unawares" by the actions of the council. It is interesting, however, to note that the plaintiff here was the officer in charge of elections under § 368A.3(7) (1973) (pre-home rule) which provided that the clerk shall "[p]erform such duties in respect to elections and other matters as required by law," and to "maintain city records and perform other duties prescribed by state or city law," under § 372.13(3) (home rule). He should have known as well as, or better than, any other party involved that the election was past due. Further, he did not show, or even claim, that he would have been in a better position to protect his interests after a period of notice preceding an election. The ordinance in effect had given him notice of the election months previously. It could be claimed that Westphal had a duty to present election matters in a timely manner for council action; even if he did not, he should at least be charged with notice of the provisions of the statutes and ordinance requiring council action to appoint a clerk.

■ The plaintiff also claims that he was removed from office without the notice and hearing protections of chapter 203, § 24, Acts of the 66th G.A. (now § 372.15, The Code). Under our view of this case, however, he was not removed within the meaning of that section; he was simply not reappointed. His status as a holdover clerk was terminated.

■ Unfairness and insensitivity are apparent in the proceedings used to end Westphal's tenure, and we do not put our stamp of approval on them. Without an underlying legal right to hold office as a basis for it, however, an action for damages may not be used by him as a means for lodging protest.

We conclude that he did not have the right to hold the office of clerk after October 18, 1976, as a matter of law, and that the court therefore erred in denying the motion for directed verdict.

REVERSED.