Richard BAILIFF, Plaintiff,

v.

ADAMS COUNTY CONFERENCE BOARD; Adams County Board of Supervisors; Earl Hardisty; Daniel Morgan; Kevin Wynn; James R. Amdor; Verlyn C. Rice; Richard Cantieri; Thomas Shipley; Kurt W. Scott; Cheryl Blazek; Marvin Steffen; Malcom M. Shipley; Jacque Ann Laird, Defendants.

No. Civ. 4–98–CV–10516.

United States District Court,
S.D. Iowa,
Central Division.

March 4, 1999.

924

James E. Brick, Brick Gentry Bowers Swartz Stoltze Schuling & Levis PC, Des Moines, IA, for Richard Bailiff, plaintiff.

Hugh J. Cain, Hopkins & Huebner, Des Moines, IA, for Adams County Board of Supervisors, defendant.

Guy R. Cook, Grefe & Sidney PLC, Des Moines, IA, for Earl Hardisty, defendant.

## ORDER

LONGSTAFF, Chief Judge.

Plaintiff Richard Bailiff ("Bailiff") filed the above-captioned suit after he was not reappointed as Adams County assessor. Before the Court is the motion of several defendants to dismiss, filed October 19, 1998. Plaintiff resisted the motion November 4, 1998, and defendants filed a reply November 23, 1998. The matter is now considered fully submitted.[1]

---

1. Although defendants requested oral argument, the Court finds oral argument unnecessary.

## I. BACKGROUND

For the purposes of this motion to dismiss, the following facts are viewed in a light most favorable to the nonmoving party. Plaintiff was the Adams County Assessor, and had held the position, by appointment, for over twenty years. On February 1, 1997, the Adams County Conference Board (the "Conference Board")[2] voted to reappoint Bailiff as Adams County Assessor for a six-year term. Judy Beckett, the Prescott City Clerk, made the initial motion for reappointment, which was seconded by Tom Shipley. The Conference Board then split into the three statutorily-required voting groups and individually caucused. Beckett participated in the internal vote of the mayors' group. When the Conference Board reconvened to vote on the motion to reappoint Bailiff, the Board returned the vote as follows: Supervisors—Nay; Mayors—Aye; School Boards—Aye. The vote was recorded in the February 13, 1997 Conference Board meeting minutes, which were approved at a March 6, 1997 Conference Board meeting.

On approximately January 20, 1998, Morgan, Wynn, Cantieri, and members of the Board of Supervisors met at the County Assessor's office and reviewed the minutes of the 1997 meetings of the Conference Board. Plaintiff alleges that Morgan, Amdor, and Wynn photocopied the minutes of the 1997 meetings. Shortly thereafter, the Conference Board held closed meetings, during which the members discussed Bailiff's reappointment, and an error that may have occurred in the reappointment process.

At a February 4, 1998 Conference Board meeting, the Conference Board unanimously approved a conclusion that the February 13, 1997 reappointment of Bailiff was procedurally flawed, rendering the reappointment invalid. A new vote to appoint a county assessor was necessary and the Conference Board voted not to reappoint Bailiff. All three Conference Board groups voted not to reappoint Bailiff.

Plaintiff filed the instant suit after the Conference Board voted to not reappoint him, alleging the following: 42 U.S.C. § 1983 (Count I); conspiracy to violate plaintiff's constitutional rights (Count II); "ERISA" (Count III): intentional interference with contract (Count IV); Iowa Constitution violation (Count V); wrongful termination (Count VI); violation of Iowa Code § 441.2 (Count VII); abuse of process (Count VIII); open meetings violation (Count IX); estoppel (Count X). Defendants Adams County Board of Supervisors and its members, and Earl Hardisty, filed the instant motion to dismiss, seeking dismissal of Counts I, II, and III, the counts upon which federal question jurisdiction is based.

## II. APPLICABLE LAW

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss all or a portion of the claim "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the Court will accept as true all factual allegations in the complaint. *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740 (8th Cir.1996) (citing *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163–65, 113 S.Ct. 1160, 122

2. The Conference Board is an Adams County entity consisting of the mayors of all incorporated cities in Adams County, the Adams County Board of Supervisors, and representatives from the board of directors at each high school district in Adams County.

Defendants Wynn, Morgan, Cantieri, Amdor, and Rice were members of the Adams County Board of Supervisors. Defendants Shipley and Laird were mayors of incorporated cities in Adams County. Defendant Hardisty was the Adams County Attorney and was an advisor to the Conference Board. Defendants Scott and Blazek were members of the Conference Board who were school board representatives. Plaintiff brings suit against these defendants in their official and individual capacities.

L.Ed.2d 517 (1993)). However, "conclusory allegations of law and unwarranted inferences are insufficient" to defeat a 12(b)(6) motion to dismiss. *In re Syntex*, 95 F.3d 922, 926 (9th Cir.1996) (citation omitted). A motion to dismiss will be granted "only if no set of facts would entitle the plaintiff to relief." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45–47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. Conspiracy Claim

Defendants seek dismissal of Count II, "Conspiracy to Violate Plaintiff's Constitutional Rights," arguing that the facts pled by plaintiff fail to establish the elements of the cause of action. Plaintiff's resistance clarifies that Count II alleges a violation of 42 U.S.C. § 1985(3). Defendants argue that plaintiff has failed to show the type of animus necessary to prove a section 1985(3) conspiracy claim.[3]

To prove the existence of a civil rights conspiracy under 42 U.S.C. § 1985(3), a plaintiff must prove:

> (1) that the defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States."

*Larson ex rel Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir.1996) (citations omitted). Stemming from the statute's term "equal" is a motivation requirement: "some sort of animus is necessary under section 1985(3)." *Marquart v. Lodge 837*,

26 F.3d 842, 854 (8th Cir.1994) (citations omitted); *see also Griffin v. Breckenridge*, 4083U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (discussing the source of the animus requirement); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) ("To prove a conspiracy in violation of the first clause of § 1985(3), a plaintiff must show 'that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action.' ") (citation and internal quotation marks omitted). Although *Griffin* reiterated that racial animus satisfied the motivation requirement, the Court declined to evaluate "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the portion of § 1985." *Griffin*, 403 U.S. at 102 n. 9, 91 S.Ct. 1790.

Over two decades later, *Bray* addressed whether other types of animus would be actionable under section 1985. *See Bray*, 506 U.S. at 269, 113 S.Ct. 753. Concluding that "women seeking abortion" was not the type of class subject to protection under section 1985(3), the Court noted:

> whatever may be the precise meaning of a "class" for purposes of Griffin's speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the "general federal tort law" it was the very purpose of animus to avoid.... As Justice

---

**3.** In addressing the animus issue, plaintiff relies primarily upon *Lewis v. Pearson Found., Inc.*, 908 F.2d 318 (8th Cir.1990). The Court does not find this authority persuasive as it was vacated September 7, 1990. After vacating the panel opinion reversing and remanding the district court order, rehearing was held, en banc. An equally divided court affirmed the decision of the district court. *Lewis v. Pearson Found., Inc.*, 917 F.2d 1077 (8th Cir.1990).

Blackmun has cogently put it, the class "cannot be defined simply as the group of victims of the tortious action."

*Bray,* 506 U.S. at 269, 113 S.Ct. 753 (internal citations omitted).[4] Thus, the Supreme Court reiterated that section 1985 is a tort action available only to a limited class of aggrieved persons.

Additionally, the Supreme Court has unequivocally excluded some potential plaintiffs from section 1985(3)'s scope: "We ... cannot construe § 1985(3) to reach conspiracies motivated by economic or commercial animus.... Economic and commercial conflicts, we think, are best dealt with by statutes, federal or state, specifically addressed to such problems, as well as by the general law proscribing injuries to persons and property." *United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 838–39, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

■ Turning to the instant case, the Court must assess whether plaintiff alleges a class qualifying for protection under section 1985(3). In explaining the grounds for his conspiracy claim, plaintiff states: "Defendants conspired to hold a closed meeting in violation of the law, for the purpose of directly depriving Plaintiff of his rights to work as a county assessor in compliance with Iowa Code § 441.8 .... [which] guarantees a county assessor the substantive and procedural due process of written notice and opportunity to be heard at least ninety days before the Board decides not to review the assessor's appointment." Brief in Support of Plaintiff's Resistance to Motion to Dismiss, at 6. Plaintiff explains that these rights are guaranteed by statute, namely Iowa Code

§ 441.8; therefore, they fall within the rights protected by section 1985. *See* Brief in Support of Plaintiff's Resistance to Motion to Dismiss, at 9 ("those [people] specifically protected by explicit guarantees of substantive and procedural due process of state law, are protected as a class for § 1985 purposes."). From these statements and the initial complaint, the Court ascertains that plaintiff alleges the class affected is county assessors, who "[u]nder Iowa law ... enjoy the common characteristic of being protected by these procedural due process guarantees, distinguishing them from other county employees, as well as the rest of the population." Brief in Support of Plaintiff's Resistance to Motion to Dismiss, at 9.

In light of the Supreme Court's analyses in *Bray* and *United Brotherhood of Carpenters,* this Court finds the class of county assessors is not a qualifying class under section 1985(3). To date, the Supreme Court has concluded only that a claim of racial animus is sufficient to entitle a plaintiff to pursue a section 1985(3) claim, and has rejected all other classes before it with such claims. Although this Court recognizes that other classes may fall within section 1985(3)'s rubric, the Supreme Court has made clear that any other qualifying classes must, at the least, be suspect classes. "County assessors" is not a suspect class. Indeed, plaintiff's proposed class is the type that would encourage a "general federal tort law" interpretation of section 1985(3)—an interpretation that the Supreme Court has repeatedly rejected. *See Bray,* 506 U.S. at 269, 113 S.Ct. 753; *Griffin,* 403 U.S. at 101–02, 91 S.Ct. 1790. Additionally, county assessors as a class is

---

4. In *Bray,* abortion clinics and abortion rights organizations sought an injunction preventing abortion protestors ("Operation Rescue") from trespassing on, impeding, or obstructing access to and from facilities providing abortion services and counseling. 506 U.S. 263, 113 S.Ct. 753. The District Court ruled that Operation Rescue had violated 42 U.S.C. § 1985(3) by conspiring to deprive women seeking abortions of their right to interstate travel, and the Court of Appeals affirmed. *Id.*

at 269, 113 S.Ct. 753. In addition to considering whether "women seeking abortion" qualified as a class under section 1985(3), the Supreme Court also considered whether women in general could be a qualifying class. *Id.* at 266–70, 113 S.Ct. 753. The Court rejected the claim without analyzing the class qualifications, because Operation Rescue's actions were not directed specifically at women as a class. *Id.*

the type of economic or commercial conflict of which *United Brotherhood* disapproved. The Court finds that plaintiff has failed to assert the animus necessary to state a section 1985(3) claim. Accordingly, Count II is dismissed as against defendants Adams County Board of Supervisors and its individual members Dan Morgan, Kevin Wynn, James Amdor, Verlyn Rice, and Richard Cantieri, as well as defendant Earl Hardisty.

### C. ERISA Claim

Plaintiff's Count III is brought pursuant to the Employment Retirement Security Income Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Citing 29 U.S.C. § 1132(a)(1)(B),[5] plaintiff argues that defendants prevented him "from attaining fully vested rights in the IPERS[6] program...." Complaint, ¶ 41.

IPERS is excluded from ERISA protection, as it is a "governmental plan."[7] ERISA excludes governmental plans from its scope. *See* 29 U.S.C. § 1003(b)(1). Therefore, plaintiff cannot state a claim with reference to the IPERS plan.

In his resistance, plaintiff restates Count III: as the basis for his ERISA claim, he refers to a private health benefit plan provided to Adams County employees, rather than IPERS employee benefits set forth in his complaint. Under most circumstances, the Court would not consider plaintiff's deviation from the claims set forth in the complaint. In the instant case, however, the Court believes it more efficient to assess the substantive issue in this Order. Plaintiff appears to make a claim pursuant to 29 U.S.C. § 1140, which states in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

The Eighth Circuit Court of Appeals has noted that a prima facie case of retaliation under ERISA requires a showing of "the existence of a causal connection between participation in a statutorily protected activity and an adverse employment action." *Kinkead v. Southwestern Bell Tel. Co.,* 49 F.3d 454, 456 (8th Cir.1995); *see also Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir.1992). In the instant case, plaintiff has not alleged any causal connection between his loss of health insurance benefits and his termination. In essence, his allegation under Count III is that as a consequence of losing his job, he was also no longer eligible to participate in the group health plan used for Adams County employees. Such a claim does not state a tort under federal law. Accordingly, plaintiff's Count III is dismissed as against defendants Adams County Board of Supervisors and its individual members Dan Morgan, Kevin Wynn, James Amdor, Verlyn Rice, and Richard Cantieri, as well as defendant Earl Hardisty.

### D. Section 1983 Claim

Plaintiff asserts he is entitled to damages pursuant to 42 U.S.C. § 1983, which states in pertinent part:

---

5. In his resistance, plaintiff cites 29 U.S.C. § 1132(a)(2) as authority for plaintiff's ERISA claim. The Court has reviewed the subsection and concluded that it is inapplicable to the instant case. The Court has deduced that the more appropriate citation is 29 U.S.C. § 1132(a)(1)(B). If the Court has made a wrong presumption, plaintiff is encouraged to file an appropriate clarification.

6. "IPERS" is the Iowa Public Employee's Retirement System.

7. 29 U.S.C. § 1002(32) provides in pertinent part:

> The term "governmental plan" means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing....

Plaintiff does not dispute that IPERS is a governmental plan.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Although unclear, plaintiff's complaint appears to allege several constitutional violations, and the Court will address each in turn.

### 1. Procedural Due Process [8]

Plaintiff argues defendants denied him procedural due process, resulting in a deprivation of a property interest and a liberty interest. In setting forth the property interest of which he was allegedly deprived, plaintiff states:

> In undertaking to deprive Plaintiff of the property interest he possesses in his employment, without providing Plaintiff adequate and prior notice of the charges against him, the substantive evidence against him, a meaningful opportunity to be heard or a fair and impartial decision maker, all in violation of Plaintiff's procedural rights to due process under the Fourteenth Amendment to the United States Constitution; ...

Complaint, ¶ 31b. As for the liberty interest, plaintiff states defendants acted:

> In disparaging Plaintiff's good name and reputation in conjunction with undertaking to terminate Plaintiff's employment in violation of Plaintiff's liberty interest under the Fourteenth Amendment to the United States Constitution....

Complaint, ¶ 31c.

"The requirements of procedural due process apply only to the deprivations of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "A government employee is entitled to procedural due process when he has been deprived of a constitutionally protected property or liberty interest." *Winegar v. Des Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994). If a protected interest is implicated, "the right to some kind of prior hearing is paramount." *Board of Regents v. Roth*, 408 U.S. at 569–70, 92 S.Ct. 2701.

### a. Plaintiff's Property Interest

■■■ To claim a constitutionally protected property interest, "[a] person must have a legitimate claim of entitlement to his or her employment...." *Board of Regents v. Roth*, 408 U.S. at 569–70, 92 S.Ct. 2701 (citations omitted). State law determines whether this type of property right exists. *Id.* The property right may develop from several sources:

> Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee. A property interest in employment can also be created by implied contract, arising out of customs, practices, and defacto policies. When such a property interest exists, the employee is entitled to a hearing or some related form of due process before being deprived of the interest.

*Winegar*, 20 F.3d at 899 (internal citations omitted).

Plaintiff cites Iowa Code § 441.8 as the source of a "statutorily protected right to employment of all County Assessors which cannot be denied without notifying the as-

---

8. Defendants submitted outside material, and requested that the Court consider matters outside the pleadings for purposes of this motion. Pursuant to Federal Rule of Civil Procedure 8(b), the Court has elected to treat the motion as one for summary judgment, solely for purposes of the procedural due process issue.

The Court notes that plaintiff was afforded a fair opportunity to respond to the motion for summary judgment, and did so, in his resistance. Additionally, the Court notes that in considering material outside the pleadings, the only facts that were material and relevant to the Court's decision were undisputed.

sessor in writing of the intention of the Conference Board to not reappoint the assessor for an additional term." Plaintiff's Resistance to Motion to Dismiss, at 13. The section states in pertinent part:

The term of office of an assessor appointed under this chapter shall be for six years. Appointments for each succeeding term shall be made in the same manner as the original appointment except that not less than ninety days before the expiration of the term of the assessor the conference board shall hold a meeting to determine whether or not it desires to reappoint the incumbent assessor to a new term.

Iowa Code § 441.8. The Iowa Administrative Code supplements the code section, and states in part:

A conference board must decide whether to reappoint an incumbent assessor at least ninety (90) days before the expiration of the incumbent's term. If the incumbent is not to be reappointed, the conference board shall so notify the incumbent in writing at least ninety (90) days before the expiration of the incumbent's term.

Iowa Admin.Code r. 701–72.16(441)(1) (1986). Plaintiff argues that defendants deprived him of two procedural protections set forth under Iowa law. First, Iowa Code section 441.8 guarantees him employment for a six-year term once he was reappointed on February 13, 1997. Second, the Iowa Administrative Code requires that the Board give him written notice of a decision not to reappoint him at least ninety days before the end of his term.

Defendants argue that the statute and administrative rule plaintiff cites are inapplicable to Bailiff because the initial reappointment in February 1997 was procedurally improper. According to defendants' argument, the procedural irregularity rendered him a holdover appointee rather than a reappointed County Assessor; therefore, he had no property right to the position. Initially, the Court will examine whether the February 1997 reappointment of Bailiff was valid.

The Iowa Code delegates power to appoint a county assessor to a county conference board. Iowa Code § 441.6. The conference board is established as follows:

In each county ... having an assessor there shall be established a conference board. In counties the conference board shall consist of the mayors of all incorporated cities in the county whose property is assessed by the county assessor, one representative from the board of directors of each high school district of the county, who is a resident of the county, said board of directors appointing said representative for a one-year term and notifying the clerk of the conference board as to their representative, and members of the board of supervisors.... In any action taken by the conference board, the mayors of all incorporated cities in the county whose property is assessed by the county assessor shall constitute one voting unit, the members of the city board of education or one representative from the board of directors of each high school district of the county shall constitute one voting unit, the members of the city council shall constitute one voting unit, and the county board of supervisors shall constitute one voting unit, each unit having a single vote and no action shall be valid except by the vote of not less than two out of the three units. The majority vote of the members present shall determine the vote of the unit....

Iowa Code 441.2. Additionally, the Iowa Administrative Code sets forth procedures to be used if a conference board member is not present:

a. Votes on matters before a conference board shall be by unit as provided in Iowa Code section 441.2. At least two members of each voting unit must be present in order for the unit to cast a vote.... In the event the vote of the

members of the voting unit ends in a tie, the unit shall not cast a vote on the particular matter before the conference board.

b. If a member of the conference board is absent from the meeting, the member's vote may not be cast by another person. . . .

Iowa Admin.Code r. 701–71.19(3) (1997).

Defendants argue that the February 1997 vote was procedurally improper because the motion to reappoint Bailiff was made by Judy Beckett, the Prescott City Clerk. When the Conference Board split into the three voting groups to perform individual caucusing on February 1, 1997, Judy Beckett voted with the group of mayors, in favor of reappointing Bailiff. The final vote of the groups was: Supervisors—Nay; Mayors—Aye; and School Boards—Aye. Defendants assert that Beckett's casting of a vote within the mayors' group was a procedural irregularity and therefore the entire reappointment was invalid. Because the reappointment was invalid, Bailiff's status in remaining County Assessor after his term expired was as holdover appointee, provided for in the Iowa Code:

> Except when otherwise provided, every officer elected or appointed for a fixed term shall hold office until a successor is elected and qualified, unless the officer resigns, or is removed or suspended, as provided by law.

Iowa Code § 60.1. Defendants argue that if plaintiff was a holdover appointee, he was not entitled to the ninety-day notice and was not guaranteed a six-year term; in other words, Bailiff was not entitled to the due process on which he bases his claim.

"An appointment of a public officer requires an open, unequivocal act evidencing it." Westphal v. City of Council Bluffs, 275 N.W.2d 439, 443 (Iowa 1979). "In addition, it must be made in strict compliance with the statute or constitution granting the power to appoint." Id. The Iowa Supreme Court has distinguished between an exercise of the power of confirmation, a less formal procedure, and an exercise of the power of appointment, which is not completed "by merely recognizing or accepting the status of a person claiming an office." Westphal, 275 N.W.2d at 444.

In Westphal v. City of Council Bluffs, the plaintiff, a former city clerk, brought suit against his past employer, the city, for lost compensation after he was allegedly wrongfully removed from office by the city council. 275 N.W.2d at 441. Initially, Westphal had been appointed for a term which commenced August 2, 1963. He was reappointed several times pursuant to the Iowa Code. He prepared a resolution for reappointment for a term in 1972, and presented it to the city council, but for some reason no action was taken on the resolution. He held the office of city clerk until 1976, when the process by which he had been appointed was questioned, and he was removed from office. The Iowa Supreme Court found that because the plaintiff was never properly appointed to office, he was not improperly removed from office. The court therefore concluded that during the years he had acted as city clerk, but had not been formally appointed to the office, his status was that of a holdover appointee. As a holdover appointee, he could be removed from office without the notice and hearing protections which were set forth in Iowa Code section 327.15 (governing removal of appointees to city offices). The court noted: "Under our view of this case, he was not removed within the meaning of that section; he was simply not reappointed. His status as a holdover clerk was terminated." Westphal, 275 N.W.2d at 445.

██ Westphal is unambiguous in stating that all appointments of public officers in Iowa must be made in strict compliance with the relevant procedures. The February 1, 1997 vote which resulted in Bailiff's reappointment was procedurally flawed because Judy Beckett participated in the voting process, and Iowa law excluded her

from the voting process. Iowa Admin.Code r. 701–71.19(3). This irregularity rendered the reappointment invalid. *See Westphal,* 275 N.W.2d at 443–44.[9] Even if the absence of Ms. Beckett's vote would not have affected the outcome of the reappointment vote, the requirements under Iowa law of strict conformance to procedures within the appointment process render the reappointment invalid.

Plaintiff argues that Beckett's vote was not made as a member of the Board and instead was cast as a member of a voting unit; therefore, the conference board vote was proper. The Court disagrees with plaintiff's characterization of the Iowa Administrative Code. *All* matters before the Conference Board are, by law, voted upon by unit. Iowa Admin.Code r. 701–71.19(3). The administrative rules are structured in a manner that prevents an "individual" from ever making a conference board vote. Instead, individuals vote as members of the voting groups, the votes within each group are tallied, and the unit vote is appropriately cast. *See id.* Plaintiff's interpretation of the rules results in a system under which there would exist no barrier preventing unauthorized people from casting votes at the individual caucus stage. The Court declines to adopt plain-

tiff's generous interpretation of the conference board voting rules. For similar reasons, the Court also declines to adopt plaintiff's suggestion that so long as two members of a voting unit are present, a vote is proper, even if other non-members vote with the unit. Even if, as plaintiff asserts, the Conference Board's actions in finding the February 1997 votes procedurally irregular were motivated by animus, the court must find the reappointment vote invalid, because it failed to conform to Iowa law.[10]

■ The Court must next consider the effect of the invalid appointment on Bailiff's status as County Assessor. *Westphal,* discussed above, leads this Court to find that plaintiff was a holdover appointee, as set forth in Iowa Code section 69.1. As a holdover appointee, plaintiff was not entitled to claim he was serving a six-year term as county assessor; therefore, he could not have had a property right to the position. Consequently, the Court finds it unnecessary to address whether Iowa Code section 441.8 created a property right to a six-year term.

Plaintiff also argues he was entitled to written notice, to be given at least ninety days before the expiration of his term, that he was not to be reappointed.[11] Presum-

---

9. Citing *Polk County v. Iowa State Appeal Bd.,* 330 N.W.2d 267, 271–72 (Iowa 1983), plaintiff argues "[d]efendants cannot challenge their own action of duly reappointing Plaintiff to an additional six-year term...." because "a county does not have standing to challenge its own action." Brief in Support of Resistance to Defendants' Motion to Dismiss and Motion for Partial Summary Judgment, at 16. In *Polk County,* the Iowa Supreme Court considered whether, pursuant to the Iowa Administrative Procedure Act ("IAPA"), a county had standing to seek judicial review of a State Appeal Board decision. The county was seeking judicial review under Iowa Code chapter 17A, which required a person or party to show standing as one "aggrieved or adversely affected by [the] final agency action." *Polk County,* 330 N.W.2d at 271 (citation and internal quotation marks omitted). The Court found that the county did not meet this standard and therefore could not challenge the agency's discretion. *Id.* at 271–72. In con-

trast to *Polk County,* the instant case did not involve a county seeking judicial review, under the IAPA, of an agency discretionary action. The Court finds *Polk County* wholly inapplicable to the instant case.

10. Notably, in *Westphal,* the plaintiff alleged that the city council's action in replacing him as city clerk was prompted by animosity between a council member and him. 275 N.W.2d at 441. In response to his argument, the Iowa Supreme Court noted: "Unfairness and insensitivity are apparent in the proceedings used to end Westphal's tenure, and we do not put our stamp of approval on them. Without an underlying legal right to hold office as a basis for it, however, an action for damages may not be used by him as a means for lodging protest." 275 N.W.2d at 445.

11. None of the pleadings or documents submitted by the parties indicate the date Bailiff's term expired.

ably, plaintiff was properly appointed to his prior term; therefore, he would have been entitled to the notice provisions set forth in Iowa Code and Iowa Administrative Code. *See* Iowa Code § 441.8; Iowa Admin.Code r. 701–72.16(441)(1). Plaintiff argues that he was denied due process because the conference Board failed to give him such notice.

■ "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Winegar v. Des Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 899–900 (8th Cir.1994). Viewing the facts most favorably to the plaintiff, the Conference Board did not give him ninety-day written notice that he would not be reappointed. However, the failure to give him notice does not, as a matter of law, give rise to a procedural due process claim. Even if he had received notice, he would not have been entitled to a hearing or any other method of contesting the Conference Board's decision. The statutory provisions regarding appointment of a county assessor list minimal requirements for an appointee, but leave the decision to the discretion of a conference board. The Court concludes that Conference Board's failure to provide Bailiff with ninety-day written notice of the decision not to reappoint him did not deprive him of a property interest which would invoke procedural due process protection. Accordingly, plaintiff's section 1983 claim is dismissed as to the claim that defendants denied him a property interest that invoked procedural due process requirements.

**b. Plaintiff's Liberty Interest**

■ An employee's liberty interests are implicated "where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Winegar*, 20 F.3d at 899.

The Court has reviewed plaintiff's complaint and finds no factual assertions supporting this allegation. Although the Court recognizes that Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," plaintiff's liberty interest claim falls short of this liberal standard. The Eighth Circuit has noted that "[a]t the very least, however, the complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir.1995) (citation omitted). Like the complaint at issue in *Frey*, plaintiff's deprivation of a liberty interest claim "is entirely conclusory, [and gives] no idea what acts the individual defendants are accused of that could result in liability...." *Id.* at 672.

■ The Court finds that plaintiff's pleading alleging defendants deprived him of a liberty interest is conclusory and without facts to support such an allegation. Accordingly, plaintiff's deprivation of liberty interest claim set forth in Count I of his complaint is dismissed.[12]

**2. First Amendment**

Plaintiff's complaint also alleges, as part of the section 1983 claim, that he was deprived of rights secured by the First Amendment, specifically:

> In undertaking to terminate, nullify, void, or otherwise adversely affect Plaintiff's employment in retaliation for Plaintiff filing a "Notice of Forfeiture of Real Estate Contract" on December 18, 1997, relating to a real estate transaction between Plaintiff and his wife, Darlene Bailiff, Sellers, and the Board of Supervisors, Buyers, whereunder the Board of Supervisors was to pay $106,399.00 plus interest to the Bailiffs for a certain tract of land. This transaction was in no way connected to or associated with his em-

---

**12.** Additionally, plaintiff failed to resist defendants' argument seeking dismissal of this claim, and therefore as an alternate ground for dismissal, the Court must presume plaintiff has abandoned the claim.

ployment as Adams County Assessor. This retaliation violates Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

Complaint, ¶ 31a.

 "Nonverbal conduct constitutes speech if it is intended to convey a particularized message and the likelihood is great that the message will be understood by those who view it, regardless of whether it is actually understood in a particular instance in such a way." *Burnham v. Ianni,* 119 F.3d 668, 674 (8th Cir.1997) (citation omitted). The Court finds that the filing of a notice of forfeiture does not constitute the type of nonverbal conduct protected by the First Amendment. The act was not intended to convey a particularized message; rather, plaintiff filed the notice to recover $106,399 plus interest from the Board of Supervisors. Accordingly, the Court finds that plaintiff's allegation that he was deprived of rights under the First and Fourteenth amendments must fail as a matter of law. The First Amendment portion of plaintiff's section 1983 claim is dismissed.[13]

### 3. Equal Protection & Substantive Due Process [14]

Plaintiff claims that defendants denied him equal protection and substantive due process:

In arbitrarily, randomly, capriciously, and without any rational basis, undertaking to terminate, nullify, revoke, or otherwise adversely affect Plaintiff's employment, which unduly and unnecessarily restricted Plaintiff's employment opportunities in violation of Plaintiff's rights to equal protection of the laws and rights to due process as secured by

the Fourteenth Amendment to the United States Constitution....

Complaint, ¶ 31d.

#### a. Equal Protection

 To state an equal protection claim, a plaintiff must establish that he was treated differently from others similarly situated to him. *Johnson v. City of Minneapolis,* 152 F.3d 859, 862 (8th Cir. 1998) (citation omitted). In the instant case, plaintiff has not asserted membership in any protected class. Indeed, plaintiff has failed to assert membership in any class. Plaintiff's failure to assert any class membership renders his equal protection claim invalid as a matter of law. Accordingly, plaintiff's section 1983 claim asserting defendants infringed upon plaintiff's right to equal protection is dismissed.

#### b. Substantive Due Process

The Eighth Circuit Court of Appeals has described two types of substantive due process analyses:

... the Constitution embodies a concept of substantive due process, which prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordained liberty.... Thus, substantive due process claims are analyzed under two tests. First, the state is forbidden from infringing certain "fundamental" liberty interests at all—no matter what process is provided—unless the infringement is narrowly tailored to serve a compelling state interest.... Second, the state's conduct must shock the conscience or otherwise offend our judicial notions of fairness, or must be offensive to human dignity.... In this Circuit, we have placed a heavy burden on those wishing to extend substantive due process into new arenas.... The

---

**13.** Again, plaintiff failed to resist defendants' argument seeking dismissal of this claim, and therefore as an alternate ground for dismissal, the Court must presume plaintiff has abandoned the claim.

**14.** Plaintiff also failed to resist defendants' argument seeking dismissal of this claim, and therefore as an alternate ground for dismissal, the Court must presume plaintiff has abandoned the claim.

fundamental liberty interests implicated in this type of substantive due process challenge generally involve those rights "so rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Brown v. Nix,* 33 F.3d 951, 953–54 (8th Cir.1994) (internal citations omitted).

The Court finds no grounds to support plaintiff's claim. Plaintiff has not asserted deprivation of a fundamental liberty interest which would satisfy the first substantive due process analysis. Additionally, the activity plaintiff alleges does not meet the high level of egregiousness required to satisfy the second analysis. Accordingly, plaintiff's section 1983 claim asserting defendants' deprived him of substantive due process is dismissed.

## III. CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED. Plaintiff's Counts I, II and III are DISMISSED as against defendants Adams County Board of Supervisors and its individual members Dan Morgan, Kevin Wynn, James Amdor, Verlyn Rice, and Richard Cantieri, as well as Earl Hardisty. The other defendants— Adams County Conference Board, Thomas Shipley, Kurt Scott, Cheryl Blazek, Marvin Steffen, Malcom Shipley, and Jacque Ann Laird—have not sought dismissal and therefore fully remain as defendants to plaintiff's Counts I, II, and III.

IT IS SO ORDERED.