# IN THE COURT OF APPEALS OF IOWA

No. 19-2014
Filed March 3, 2021

**DOREEN DENISE MOWERY,**
Plaintiff-Appellee,

**vs.**

**THE CITY OF CARTER LAKE, IOWA, a Municipality, GERALD WALTRIP, JOHN "PAT" PATERSON, MARY SCHOMER, FRANK CORCORAN, and RONALD CUMBERLEDGE, Individuals,**
Defendants-Appellants.

_____

Appeal from the Iowa District Court for Pottawattamie County, Timothy O'Grady, Judge.

The defendants appeal an adverse judgment in this action by a former employee for breach of contract, promissory estoppel, and retaliatory discharge in violation of public policy. **AFFIRMED ON CONDITION AND CASE REMANDED.**

Robert M. Livingston and Kristopher K. Madsen of Stuart Tinley Law Firm, LLP, Council Bluffs, for appellants.

Marc A. Humphrey of Humphrey Law Firm, P.C., Des Moines, for appellee.

Heard by Bower, C.J., and Tabor and Mullins, JJ.

**BOWER, Chief Judge.**

Former city clerk Doreen Mowery sued the City of Carter Lake, Gerald "Jerry" Waltrip, John "Pat" Paterson, Mary Schomer, Frank Corcoran, and Ronald Cumberledge (collectively "the defendants") for breach of contract, promissory estoppel, and retaliatory discharge in violation of public policy. The defendants appeal an adverse jury verdict, contending the district court erred in failing to direct a verdict in their favor on each claim or, in the alternative, to order remittitur of duplicate damages awarded by the jury.

The defendants assert that, assuming there was a contract which provided for severance if Mowery's employment was "terminated" during the five-year term, "this case is a case where [Mowery] was not reappointed [as city clerk]. She wasn't terminated. She wasn't fired. She wasn't discharged." The jury rejected the defendants' argument, finding specifically the failure to reappoint Mowery was a violation of public policy and Mowery's refusal "to pay dual compensation to Councilwoman Mary Schomer" was "a determining factor for her termination on January 18, 2016." There is substantial evidence to support the jury's findings and conclusions. However, the jury awarded duplicative damages for back pay. We affirm on all issues except remittitur, and we conditionally affirm the trial court's denial of the defendants' motion for new trial.

**I. Background Facts and Proceedings.**

Pursuant to Carter Lake City Ordinance 20.01, "At its first meeting in January following the regular city election the [city] council shall appoint by majority vote a city clerk to serve for a term of two years." Compensation is "as established by resolution of the council."

Mowery was appointed city clerk in 1978, 1980, 1982, 1984, and 1986. Waltrip was elected as mayor in 1986. Waltrip and Mowery had a very contentious relationship. Mowery resigned her position in 1988 due to Waltrip's treatment of her. Waltrip remained mayor through 1993.

In 2002, Mowery was approached by Carter Lake's city clerk to help with getting the city's financial books in order and board meeting minutes completed, which had not been kept current for about two years. Mowery was working for an accounting firm at the time. The city arranged to pay the accounting firm for Mowery's time during the two months it took her to complete the tasks.

While she was helping the city, then-Mayor Emil Hauser asked Mowery to return to Carter Lake as city clerk. Mowery did not want to leave her well-compensated employment with the accounting firm to return to the city clerk position unless given some assurances against arbitrary removal. The mayor told her to write up "what it would take" for her to return. Mowery provided a list, which included, in part, a "[five]-year contract with a [six]-week severance package to include full pay, reimbursement for unused vacation and sick pay, and complete benefits (health, dental, vision, life)"; an annual salary with a 2% pay increase annually on January 1 for the term of the contract; three weeks of vacation starting January 2003; funds to attend professional organizations; and a list of priorities and expectations from the mayor and council. The mayor and council approved,

and Mowery returned as city clerk on June 3, 2002, and was reappointed in 2004 and 2006.[1]

On January 11, 2007, the city council approved a "Letter of Understanding–Compensation" signed by then-Mayor Russell Kramer and Mowery. The 2007 letter of understanding provided, in part:

> 1. Employee was hired to serve as the City Clerk, effective June 3, 2002.
> 2. Employee is an employee-at-will, serving at the pleasure of the Mayor and City Council, as set out in the Code of Iowa and City Ordinances. This is not a contract for employment.
> 3. The position of City Clerk is a salaried position, ineligible for overtime and comp time . . . [setting out salary and annual increases through January 1, 2012].
> 4. Additional benefits are as follows: [setting out vacation, administrative leave, holidays and sick leave, health insurance, and life insurance].
> 5. Employee will be evaluated on an annual basis at the same time as the other City Department Heads.
> 6. If the Employee's services are terminated by the Employer, the Employee will be granted a [four]-month severance package to include full pay, reimbursement for unused vacation and sick pay, and complete benefits of health, dental, vision, and life insurance.
> 7. Employer agrees to budget funds for attendance at [professional organizations.]
> 8. This Letter of Understanding contains all the terms of employment between the parties. Any changes must be in writing to be effective.

Mowery and the mayor signed the letter of understanding on February 9. Mowery was appointed in 2008, 2010, and 2012.

On May 21, 2012, the city council approved a new "Letter of Understanding–Compensation," which was signed by Mayor Kramer and Mowery. The following terms were included:

---

[1] Mowery's list of requirements was admitted into evidence, but no city records of the written agreement reached or the city council minutes approving the agreement were presented. Mowery was not yet city clerk when the agreement was reached.

1. Employee was appointed to serve as the City Clerk, effective upon mutual agreement of compensation package and by council approval on June 3, 2002.

2. Employee is an employee-at-will, serving at the pleasure of the Mayor and City Council, as set out in the Code of Iowa and City Ordinances. This is not a contract for employment.

3. The position of City Clerk is a salaried position, ineligible for overtime and comp time. The current salary for the position is $68,500.00 annually. Pay increases will be conditioned upon continuing employment, and satisfactory reviews, of the Employer. Pay increases will be given effective January 1 of each year and will be negotiated with the council prior to January 1 of each year.

4. Additional benefits are as follows:

a. [Two hundred] hours of vacation annually (effective on January 1 of each year) with no carryover of unused hours. Upon retirement or resignation the employee will be paid for any unused vacation time.

b. [Eighty] hours of annual administrative leave, with no carryover of unused administrative leave, effective on January 1 of each year.

c. Holiday leave will be granted as set out in the Employee Handbook.

d. Employee shall earn four hundred eighty (480) hours of sick leave per year with no carryover of unused hours, beginning in the tenth year of employment and every year thereafter.

e. Upon retirement or resignation the employee will be paid for any unused sick time. . . .

. . . .

5. A performance evaluation will be conducted by the Mayor and Council on an annual basis at the same time as the other City Department heads.

6. If the Employee's services are terminated by the Employer, during the five-year term of this agreement, the Employee will be granted [twelve] months' severance pay. Severance package to include full pay, reimbursement for unused vacation and sick pay and complete benefits of health, dental, vision and life insurance.

. . . .

8. This Letter of Understanding contains all of the terms of employment between the parties. Any changes must be in writing to be effective.

9. The term of this Letter of Understanding is for a five year period beginning June 3, 2012 and ending June 2, 2017.

In the fall of 2013, Waltrip was again elected mayor of Carter Lake. Prior to

Waltrip taking office in January 2014, a woman who worked on his election

campaign dropped several boxes at the city clerk's counter with the comment, "These are for Doreen so she can pack up her stuff." However, Mowery was reappointed in 2014 and continued to serve as city clerk. Cumberledge was a member of the council at the time and voted "no" on Mowery's appointment. Mowery and Waltrip's working relationship remained difficult. Waltrip did not approve of the council's use of letters of understanding. He was vocal about his belief that Mowery had "too much authority." The minutes from a December 16, 2014 council meeting note: "Council member [Ed] Aldmeyer stated that since the mayor has taken office, he believes he has been bullying the city clerk. He also thinks the mayor has a target on the clerk's position and her since before he took office."

In November 2015, three new members were elected to the city council— Schomer, Corcoran, and Paterson. They would join incumbent council members Cumberledge and Barbara Melonis. At the time of her election, Schomer was employed as a librarian in the Carter Lake Library and was paid by the city.

Mowery's duties as city clerk included being the city treasurer "responsible for the safe custody of all funds of the City in the manner provided by law" and the "accurate account of all disbursements, money or property, specifying date, to whom, and from what fund paid."[2] Mowery received a comment from a citizen concerned whether Schomer could be paid as both a city council member and as a librarian.[3] Mowery informed the person the city had done it before but referred

---

[2] Carter Lake Municipal Code §§ 21.01, .03(1), (4).
[3] Iowa Code section 372.13(8) (2015) provides in part: "Except as provided in section 362.5, an elected city officer is not entitled to receive any other

the person to the city attorney, the league of municipalities, and the attorney general. Mowery then received a call from the league of municipalities, which Mowery directed to City Attorney Joe Thornton and asked him to "take care of the matter."

On November 10, 2015, Thornton wrote a memorandum addressed to the mayor and city council, which states, in part:

> Applying the above principles to the facts discussed, I have concluded that Iowa Code [section] 372.13(8) is applicable to these circumstances if Mary Schomer continues to be employed at the Library while she is serving as a member of the City Council of the City of Carter Lake, Iowa.
> Mary Schomer is an employee of the City of Carter Lake and was elected as a member of the City Council. While Mary Schomer is hired by the Board of Trustees of the Library and not by the City Council, she is still a "city employee" and therefore subject to the restrictions of Iowa Code [section] 372.13(8).
> As such, under Iowa Code [section] 372.13(8), she is prohibited from receiving any other compensation (other than the compensation she would receive as a member of the City Council) from city employment which would include the compensation she would receive as an employee at the Library during her tenure in office.
> While nothing prohibits Mary Schomer from continuing her employment at the Library while she is serving as a member of the City Council, she cannot receive any wages or salary from that employment while she is serving as a member of the City Council.

Mowery advised Schomer and Waltrip of this information and provided Thornton's memorandum to the city council members prior to the January 2016 meeting. Mowery informed the mayor and city council she would not be paying Schomer in both capacities as she was not willing to violate Iowa law.

---

compensation for any other city office or city employment during that officer's tenure in office, but may be reimbursed for actual expenses incurred."

Schomer came to city hall in early January and Mowery asked her what they were going to do. Mowery told Schomer that if Schomer had a written statement from an attorney, Mowery would consider it and "try to make the correct decision." Mowery did not receive anything from Schomer.

On January 4, 2016, Waltrip confronted Mowery and demanded that she issue checks to Schomer in both of her capacities. Mowery informed him she could not legally do so unless given authority contrary to Thornton's. Waltrip "point[ed] his finger and scream[ed] at [Mowery] as he was saying, You will pay her or we will take care of you on January 18th." And then he left the office.

On January 18, 2016, the city council met for the first time following the election, Thornton and Mowery were in attendance. As city clerk, Mowery kept the minutes of council meetings. Cumberledge moved to appoint Michael O'Bradovich as city attorney, and Paterson seconded the motion. Per the minutes of the meeting, Melonis "questioned why Joe Thornton was not being re-appointed. Council member Cumberledge replied that he believed it was time for a change." Cumberledge and the three new members voted in favor, Melonis voted against.

Melonis then made a motion to reappoint Mowery as city clerk. There was no second to the motion. Cumberledge then moved to *not* reappoint Mowery, the motion was seconded by Paterson, and the motion was passed on the votes of Cumberledge, Paterson, Corcoran, and Schomer. Mowery asked the city council if there was a reason for the denial of the reappointment and "[c]ouncil member Cumberledge replied that he would not comment due to possible litigation." No city clerk was appointed.

Waltrip asked for a brief recess[4] and when the meeting reconvened, Waltrip asked Cumberledge to take the minutes of the remainder of the meeting.[5]

At the conclusion of agenda items, the minutes indicate:

> [Melonis] commented that the Mayor like[d] longevity in asking for reappointment of a long time planning board member but yet we have released a long time city clerk and attorney. She was surprised about the [city] attorney's release and now has found out there was a meeting that she was intentionally or by oversight not privy to. . . . She then read a statement that she intended to speak about earlier about council member's Schomer's dual positions with the city. She cited a couple of Iowa laws and believes the Iowa law is being violated and wants no part of the city's payment or compensation to someone who will allow themselves to receive dual compensation.

Mowery stated that as clerk she would do whatever was asked of her "as long as it wasn't illegal or immoral. She then read a statement of all that transpired in the days and months after the election regarding the issue with council member Schomer."

Schomer stated she would have her attorney come to the next meeting. Paterson stated "it is not up to the city. If people want to complain they need to take it to the election commission or the state. The city council cannot do anything about it."

Mowery received a letter from deputy city clerk Ruehle dated February 22, 2016, and check in the amount of $10,035.09. The cover letter stated: "Enclosed is paperwork terminating your employment with the City of Carter Lake. Please find your final check, information on COBRA insurance and a certified check."

---

[4] During the recess, Waltrip was observed in the hallway demanding Mowery leave the building. A security officer stepped in and stated Mowery had a right to attend the public meeting.

[5] The deputy clerk Lisa Ruehle was in the meeting room at this time but was not asked to step in and take minutes.

Mowery did not endorse the check believing she was entitled to receive $106,285.61 under the severance package that had been approved by the city council in May 2012.

Mowery filed this suit against the defendants, asserting breach of contract, promissory estoppel, and retaliatory discharge in violation of public policy.

The defendants sought summary judgment on the ground there had been no termination or discharge. The court denied the defendants' motion for summary judgment, noting: (1) "the existence and terms of a contract, and whether the contract was breached, are ordinarily questions of fact"; (2) equitable estoppel can be applied to municipalities "where the interests of justice, morality and common fairness clearly dictate that course" and because "a jury could reasonably find that the city council had modified the terms and conditions of [Mowery's] appointment and that she may have been terminated rather than denied reappointment," the issue was "a jury issue and not an issue for summary judgment"; and (3) "there is a clearly defined public policy that protects employees when they refuse to participate in illegal activities, which would be undermined by a discharge from employment" and there were disputed issues whether Mowery was retaliated against or simply not reappointed that "depend entirely on credibility and weight of the evidence."

The case was tried to a jury in September 2019. Paterson, Kramer, Waltrip, Cumberledge, Ruehle, Melonis, Corcoran, Greg Mowery, Doreen Mowery, and O'Bradovich all testified. Schomer died prior to trial.

Paterson testified that he and Waltrip started discussing letters of understanding in 2013 when Waltrip had decided to run for mayor. Paterson and

his wife wrote a letter to the Iowa Attorney General in 2014 asking about the legality of such letters of understanding and suggesting they were made in closed sessions. The attorney general's office directed the Patersons to the Iowa Public Information Office, which responded it was without jurisdiction if the event about which the complaint was made had occurred more than sixty days ago, and directed them to the Pottawattamie County Attorney's office. Paterson did not follow up. Paterson, however, did send copies of letters of understanding to his personal attorney and asked of their legality. Eventually, Paterson published Mowery's letter of understanding in the local newsletter.

Paterson also testified he and Waltrip met with Waltrip's personal attorney and former Carter Lake city attorney O'Bradovich in either 2013 or 2014. They discussed the legality of the letters of understanding. They discussed O'Bradovich's interest in becoming the city attorney for Carter Lake again.

Paterson decided to run for city council in 2015 and was encouraged to do so by Waltrip. Paterson testified that in December 2015, there were telephone discussions between him, Corcoran, Cumberledge, and Schomer concerning Mowery and agreed "all [were] on the same page that [we] did not want to reappoint Doreen Mowery as city clerk." Paterson also testified he learned of the dual compensation issue concerning Mary Schomer after talking to someone in the "League of Cities" but claimed it was not part of his decision with respect to Mowery. He stated he did not want to appoint Mowery because of her abrasiveness and other conduct he had heard about from others.

Former Mayor Kramer testified he had signed Mowery's 2012 letter of understanding, which was approved by the city council on May 21, 2012. Kramer

testified the purpose of the letter of understanding was to provide Mowery protection and benefits because city department heads could not belong to a union. He testified the letter of understanding covered "anything . . . not for just cause. If . . . she had made a gross mistake or negligent of duty, then they would say, you know, this doesn't hold true." Kramer testified "all the department heads" had letters of understanding because "they wanted some kind of protections that the union people were getting that they weren't getting." Kramer also testified about Waltrip's dislike of the letters of understanding and about the contentious relationship between Waltrip and Mowery.

Waltrip testified he did not like the letters of understanding and wanted to do away with them. He acknowledged he had met with Paterson, who shared a his dislike of the letters of understanding. Waltrip also stated he had encouraged Paterson, Corcoran, and Schomer to run for city council in 2015. Waltrip testified he believed Schomer should be paid in both capacities and he told Mowery to do so. He denied having any involvement in Mowery's non-reappointment.

Melonis testified she voted in favor of the 2012 letter of understanding:

> Q. All right. What did you understand that document's purpose to be as a member of the council? A. As a member of the council, I believed it to be as long as Doreen was performing to the expectations of the council and the mayor that she would not be unjustly terminated at the whim of one of the public officials.
> Q. And that if that happened, she would have a severance package? A. Yes.

Melonis was asked about the January 18, 2016 council meeting. This exchange occurred:

> Q. Okay. Did you have any idea that [Mowery] was not going to be reappointed by reason of their votes? A. No, and I was absolutely shocked when it happened.

. . . .

Q. All right. I want to ask you some questions about the issue involving Mary Schomer. She likewise was elected in November of 2015 to begin serving a four-year term as council member on January 1 of 2016? A. Correct.

. . . .

Q. . . . So let's go back to the election. Her election to the council by reason of her other employment at the city library created a legal issue for the—the city council members, correct? A. Very few thought so.

Q. Okay. Did you think so? A. I did think so.

Q And what was your opinion? A. The opinion is that state law says you cannot receive dual compensation.

Q. Did you undertake to research that yourself? A. Yes, I did.

Q. And based upon your research did you make that conclusion? A. I did.

Q. Leading up to that January 18th, 2016, council meeting, had you been provided a written opinion from city attorney Joe Thornton on that issue? A. Yes.

Q. And did you read that opinion? A. Yes.

Q. And do you remember what Mr. Thornton's conclusion was on the issue of whether Mary Schomer could be paid in both capacities? A. His was the same as mine, it was not allowable.

Q. So as long as she served as a council member by reason of her election she was not capable of receiving pay by reason of her position as a member of the library staff? A. She would have to give up one of the compensations, she could not be dually compensated.

. . . .

Q. All right, and what did you learn from Doreen in that conversation, to the best of your recollection? A. Doreen's opinion was the same as mine, that she was not—it was not allowable by law for the dual compensation and she was not going to write the check.

Q. Did she voice that opinion to all members of the city council? A. Yes.

At the time of trial, Cumberledge was serving as the mayor of Carter Lake. He testified he and the 2016 incoming council members Paterson, Corcoran, and Schomer had phone calls or met one-on-one prior to the January 2016 meeting and discussed various items, including to not reappoint Mowery.[6] Cumberledge expressed dissatisfaction with Mowery's job performance and salary and did not

---

[6] Cumberledge had voted "no" on Mowery's 2014 appointment.

believe the council was bound by the 2012 letter of understanding, stating his belief it should be tied to the term of the appointment.

Mowery and her husband both testified about the events leading up to the January 2016 council meeting and the effect of the loss of job had on her vocationally, monetarily, and emotionally. Mowery testified she learned Corcoran, Cumberledge, Paterson, and O'Bradovich had met at the Carter Lake library in mid-November. Mowery prepared a statement prior to the January 2016 council meeting.

On cross-examination, Mowery acknowledged the city clerk is an appointed position and she testified the letter of understanding was not a contract of employment. She "considered the agreement to cover my severance package in the event that I was no longer working for the City of Carter Lake due to no improper actions upon my part." Mowery testified, "I promised I would come and do my best job, and they promised to pay me a severance package if something happened that I had no control over."

Mowery stated:

I believe 100 percent with all my heart that they got rid of me because I refused to violate the law and pay Mary Schomer. There is nothing that anyone will ever say that will convince me any differently of that because had they had all these other reasons that they've given, they would have told me at the council meeting when I asked. They would have communicated that with me. They chose to hide that after the fact is my belief.

Mowery acknowledged Waltrip did not have a vote on her reappointment "but he certainly influenced [the council members.]"

The defendants called O'Bradovich to testify. O'Bradovich testified he first saw the letters of understanding in 2015 when Waltrip and Paterson brought them

to him. He offered them his impression that the agreements were "void as against public policy" as they were for longer than the term of appointment. He opined a letter of understanding was not an employment agreement. "I also pointed out to them that the city clerk is an employee at will but serves at the pleasure of the city council, not the mayor and the city council."

The jury found in Mowery's favor on all theories presented. On the breach-of-contract claim, the jury answered interrogatories finding: (1) the letter of understanding was a contract between Mowery and Carter Lake; (2) Carter Lake breached the contract with Mowery; and (3) the city's breach caused damage to Mowery. The jury awarded no damages on this claim.

On the promissory estoppel claim, the jury specifically found: (1) there was "a clear and definite promise made to Doreen Mowery in the Letters of Understanding"; (2) Carter Lake understood "Mowery was seeking an assurance upon which she could rely and without which she would not act"; (3) Mowery reasonably relied on the promises made to her in the letter of understanding; (4) Carter Lake broke the promises made to Mowery in the letter of understanding; and (5) Mowery suffered damages caused by the city breaking its promises to her in the Letter of Understanding. The jury awarded damages in the amount of $106,285.61, which included $73,424 for back pay.

On her claim of discharge in violation of public policy, the jury found: (1) the failure to reappoint Mowery was a violation of public policy and (2) Mowery's refusal "to pay dual compensation to Councilwoman Mary Schomer" was "a determining factor for her termination on January 18, 2016." The jury awarded

back pay from January 18, 2015, to the time of trial in the amount of $65,000 and

$100,000 for past mental pain and suffering.

The defendants filed a motion for judgment notwithstanding the verdict

(JNOV) or, in the alternative, for remittitur, asserting the damages awarded were

duplicative. The court ruled:

> Defendants argued that Plaintiff was not terminated or discharged, but was simply not reappointed. Defendants asserted that because city clerks are appointed by the city council for two year terms under the ordinance, the failure to reappoint Plaintiff is not actionable. Defendants assert that the Letter of Understanding relied upon by Plaintiff is not a contract. Defendants assert that even if the Letter of Understanding is a contract, it is void as against public policy because it attempts to bind future city councils to a term for the clerk beyond that permitted in the ordinance. Defendants claim that even if the Letter of Understanding is a contract it was not breached by the council's failure to reappoint Plaintiff. Defendants assert that promissory estoppel must fail because the promises Plaintiff relied upon were contained in the Letter of Understanding. Defendants rely on *Westphal v. the City of Council Bluffs*, 275 N.W.2d 439 (Iowa 1978), for the proposition that without an underlying legal right for Plaintiff to hold the office of clerk, an action for damages may not be used to protest the proceedings used to end her tenure. Plaintiff resisted the motion for [JNOV].
>    The jury is the fact finder. When considering a motion for [JNOV], the jury's findings are viewed in the light most favorable to the nonmoving party. The jury found that the Letter of Understanding was a contract that provided a severance package to Plaintiff if she lost her position as clerk. The council failed to reappoint Plaintiff to the position as city clerk during the period of time covered by the Letter of Understanding, activating the severance package contained in the Letter of Understanding. The Letter of Understanding was not void as against public policy. The jury found that Plaintiff reasonably relied on the promises contained in the Letter of Understanding. The jury followed the instructions by not awarding damages for both breach of contract and promissory estoppel, even though it found that Plaintiff had proven both theories of recovery.
>    The jury found that Plaintiff's refusal to pay Mary Schomer two salaries contrary to legal advice she received was a significant factor in her discharge/termination/nonreappointment. The jury found that Plaintiff's discharge/termination/nonreappointment was in violation of public policy and awarded damages for the time period from her non-reappointment through the time of trial. The damages awarded

by the jury for termination in violation of public policy are supported by substantial evidence.

This case presents different issues than *Westphal*. *Westphal* did not have the benefit of a Letter of Understanding or other contract providing severance for nonreappointment within a specified period of time. *Westphal* did not present evidence that his non-reappointment was a violation of any public policy. In this case Plaintiff presented evidence on those issues and the jury made findings of fact. The jury did not award duplicate damages. The Motion for [JNOV] is overruled. The motion for remittitur is overruled.

The defendants now appeal, essentially raising the same arguments they did in the district court.

## II. Scope and Standards of Review.

"Parties are entitled to have their legal theories submitted to the jury if they are supported by the pleadings and substantial evidence in the record." *Beyer v. Todd*, 601 N.W.2d 35, 38 (Iowa 1999). "In weighing the sufficiency of the evidence, we give it the most favorable construction possible in favor of the party urging submission." *Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 107–08 (Iowa 1986). "A motion for [JNOV] should be granted if there is not substantial evidence to support the elements of the plaintiff's claim." *Thornton v. Am. Interstate Ins. Co.*, 940 N.W.2d 1, 8 (Iowa 2020). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Johnson v. Dodgen*, 451 N.W.2d 168, 171 (Iowa 1990).

"Where damages are not supported by the evidence, the court may 'order a remittitur as a condition to avoiding a new trial.'" *Thornton*, 940 N.W.2d at 8 (quoting *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 777 (Iowa 2009)). "When ordering remittitur, the court 'award should be reduced "to the maximum amount proved" under the record.'" *Id.* (citation omitted).

**III. Discussion.**

The defendants insist Mowery's non-reappointment cannot possibly be found to be a termination or discharge and, therefore, each claim necessarily fails.

***A. Discharge in violation of public policy.*** Iowa law recognizes a "public-policy exception to the at-will employment doctrine" which "limits an employer's discretion to discharge an at-will employee when the discharge would undermine a clearly defined and well-recognized public policy of the state." *See Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 109 (Iowa 2011). The defendants do not contest that requiring an employee to perform an illegal act is contrary to public policy. *See Jasper*, 764 N.W.2d at 767–68 (noting "[w]e have recognized the tort of wrongful discharge . . . protects the refusal by an employee to engage in activity that is violative of public policy").

The defendants assert, "It is undisputed, however, that Plaintiff was not discharged (or terminated)." This is a serious mischaracterization of the parties' positions. Whether Mowery was terminated and therefore able to claim the protection of the public-policy exception to the at-will employment doctrine was a central issue in the case.

Citing *Westphal*, the defendants argue: "[Mowery's] wrongful discharge claim comes down to the question of whether dismissal or termination can be shown by a refusal to reappoint. Under Iowa law, appointment is required before termination can be considered. In other words, a failure to reappoint does not amount to termination." We disagree that the cited authority supports the proposition as characterized.

In *Westphal*, the city clerk had been reappointed a number of times and had "prepared a resolution for reappointment for 1972 and presented it to the council, but for some reason no action was taken on it."  275 N.W.2d at 441.  The relevant municipal ordinance provided:

> The City Clerk shall be elected by the City Council on the first Monday in April of each even numbered year, or as soon as practicable thereafter, and he shall hold office for the term of two years from the first Monday in April *and* until his successor has been elected and qualified.

*Id.*  However, he continued to perform his duties and receive a salary in 1972, 1973, 1974, 1975, and 1976—despite no formal appointment in any of those years. *Id.*  In 1976, the "council appropriated and paid his salary as a part of its budget, and on August 2, 1976, provided a five percent salary raise for him."  *Id.*

> A municipal election was to be held on October 18, 1976.  *Id.*

> Approximately a week before the election, Councilman Lewis "discovered" the dormant [municipal] ordinance requiring election of a clerk.  He met with two other councilmen just prior to the regularly scheduled council meeting and discussed the matter.  The election of a clerk was not on the agenda for that meeting, but was brought up by Lewis after a motion for adjournment.  The council voted, [three to two], to appoint Westphal's deputy as clerk.  This lawsuit followed.

*Id.*

The clerk sued the city for lost compensation, claiming he had been removed from office in a manner contrary to Iowa Code section 372.15 (governing removal of appointees to city offices).[7]  *Id.*  To fall within the protections of section

---

[7] Iowa Code section 372.15 provides:
Except as otherwise provided by state or city law, all persons appointed to city office may be removed by the officer or body making the appointment, but every such removal shall be by written order. The order shall give the reasons, be filed in the office of the city clerk, and a copy shall be sent by certified mail to the person removed who,

372.15, the clerk argued he was entitled to remain in his position until 1978 based on the theory that despite no formal appointment, the council had ratified or confirmed his appointment by its actions. *Id.* at 443.

The supreme court rejected the clerk's claim, noting the appointment of a public officer requires "an open, unequivocal act evidencing it" and must be "made in strict compliance with the statute or constitution granting the power to appoint." *Id.* The supreme court found that the clerk was properly initially appointed to office, and during the years he had acted as city clerk but had not been formally appointed to the office his status was that of a holdover appointee. *Id.* at 444. As a holdover appointee, he could be removed from office without the notice and hearing protections set forth in Iowa Code section 372.15. *Id.* at 445. The court noted: "Under our view of this case, he was not *removed* within the meaning of that section; he was simply not reappointed." *Id.* (emphasis added).

Relying on this sentence, the defendants argue that Mowery cannot show she was terminated or discharged. However, they fail to acknowledge the sentence immediately following: "His status as a holdover clerk was *terminated*." *Id.* (emphasis added).

We observe Mowery might well be considered to have been a holdover clerk. Iowa Code section 69.1A provides: "Except when otherwise provided, every officer elected or appointed for a fixed term *shall hold office until a successor is*

upon request filed with the clerk within thirty days of the date of mailing the copy, shall be granted a public hearing before the council on all issues connected with the removal. The hearing shall be held within thirty days of the date the request is filed, unless the person removed requests a later date.

The provision was enacted in 1975 and remains in effect unchanged.

*elected and qualified, unless* the officer resigns, or is removed or suspended, as provided by law." (Emphasis added.) Here, Carter Lake City Ordinance 20.01 provides, "At its first meeting in January following the regular city election the [city] council *shall appoint* by majority vote *a city clerk* to serve for a term of two years." (Emphasis added.) Contrary to that mandate, the city council did not appoint a city clerk at the January 2016 meeting. Nor did Mowery resign. The paperwork sent to her by Carter Lake noted her employment was *terminated* and was accompanied by the council's calculation of Mowery's severance under the employee handbook.

In any event, with respect to her claim of wrongful discharge, Instruction 17 provided:

> In order to establish a case of wrongful discharge in violation of public policy, Plaintiff will have to show that she was "discharged" or "terminated" from her employment. Appointment to a position is required before termination can be considered. A failure to reappoint does not amount to a termination, unless the failure to reappoint is a violation of Public Policy, as defined in Instruction No. 18.

Instruction 18 in turn states:

> For Plaintiff to recover for Wrongful Discharge from her employment in violation of Public Policy, she must prove all of the following propositions:
> 1. She was an employee of the City of Carter Lake, Iowa.
> 2. The City of Carter Lake discharged Plaintiff from her employment with the City of Carter Lake.
> 3. Plaintiff's refusal to violate Iowa Code section 372.13(8) with regard to dual compensation of Councilwoman Schomer was the determining factor for her termination.
> 4. The termination caused damage to Plaintiff.
> 5. The nature and extent of the damage.

While the defendants generally objected to any instruction on wrongful discharge, they do not assert instructional error as an issue on appeal or provide

any authority in support of such a claim; consequently any error is waived. *See* Iowa R. App. P. 6.903(2)(g) (requiring an argument section for "each issue raised on appeal" and noting "[f]ailure to cite authority in support of an issue may be deemed waiver of that issue"). The instructions provide the law of the case for purposes of our review. *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).

Mowery and Melonis both testified Mowery was not reappointed due to her refusal to pay Schomer in a dual capacity. The jury found Mowery was terminated. And the jury specifically found Mowery's refusal "to pay dual compensation to Councilwoman Mary Schomer" was "a determining factor for her termination on January 18, 2016." The jury awarded as damages on this wrongful-discharge claim back pay in the amount of $65,000 and past mental pain and suffering in the amount of $100,000.

At oral argument, counsel for the defendants argued there is no remedy for a wrongfully-discharged municipal employee. We cannot agree. Our supreme court has recently discussed the wrongful-discharge doctrine, stating, "Our reasoning for adopting the wrongful-discharge claim focused on *the need to provide a remedy* for conduct that violated legislatively declared public policy." *Ferguson v. Exide Techs., Inc.*, 936 N.W.2d 429, 431–32 (Iowa 2019) (emphasis added).

> We have explored and reaffirmed the doctrine in many cases since *Springer*. In *Borschel v. City of Perry*, we explained that there were three primary situations when an action for wrongful discharge in violation of public policy was available. Those situations included "retaliation for performing an important and socially desirable act, exercising a statutory right, or *refusing to commit an unlawful act*." We observed that "[s]uch policies may be expressed in the constitution and the statutes of the state."

*Id.* at 432 (citations omitted).

In *Jasper,* the supreme court reiterated public policy could be expressed in statutes, but noted:

> The use of statutes as a source of public policy also helps provide the essential notice to employers and employees of conduct that can lead to dismissal, as well as conduct that can lead to tort liability. The public-policy exception was adopted merely to place a limitation on an employer's discretion to discharge an employee when the public policy is so clear and well-defined that it should be understood and accepted in our society as a benchmark. Our reliance on statutes as a source of this limitation has been a way to ensure that the tort continues to serve its objectives.
>     While we have justifiably relied on statutes, we have not closed the door to using other sources as a means to derive public policy to support the tort. We have repeatedly observed that our constitution is a proper source of public policy. Moreover, we have recognized that other jurisdictions have used administrative regulations as a source of public policy, yet we have not had the occasion to decide the issue until today.

764 N.W.2d at 763. Noting that "administrative regulations ultimately adopted are necessarily tied to the broad directives of the legislature and effectuate the intent of the enabling legislation," "have the force and effect of a statute," and "are required to be consistent with the underlying broader statutory enactment," the court concluded "the justification for relying on statutes as a source of public policy can equally apply to administrative regulations." *Id.* at 764.

In analyzing whether the particular administrative regulations concerning staff ratios in childcare facilities encompassed such a public policy, the court stated, "a policy sought to be derived from an enactment must affect a public interest so that the tort advances general social policies, not internal employment policies or individual interests." *Id.* at 766.

Pursuant to Carter Lake's municipal code, Mowery had duties as city clerk and city treasurer to be "responsible for the safe custody of all funds of the City in the manner provided by law" and provide the "accurate account of all disbursements, money or property, specifying date, to whom, and from what fund paid." Carter Lake Municipal Code §§ 21.01, .03(1), .03(4). These ordinances are consistent with the government's fundamental duty and authority to protect the public fisc. *See generally Endress v. Iowa Dep't of Human Servs.*, 944 N.W.2d 71, 94 (Iowa 2020) (McDonald, J., dissenting in part) (noting the government's general duty and authority to protect the fisc is "fundamental to the sound operation of government"). We believe these ordinances support a clear public policy and provide a basis for allowing a claim for wrongful discharge in violation of public policy.

Mowery was informed by the city attorney that Schomer could not receive dual compensation under Iowa Code section 372.13(8). To require Mowery to pay Schomer dual compensation would violate that fundamental governmental duty to protect the municipality's funds and Mowery's statutory duties as the custodian of those municipal funds. Mowery informed the city council of the problem. The city council then terminated Mowery's employment, as well as that of the city attorney who issued the legal opinion relied upon by Mowery.

The jury findings are binding if supported by substantial evidence. *See* Iowa R. App. P. 6.904(3)(a). There was substantial evidence presented that Mowery's refusal to pay Schomer in her dual capacities as librarian and city council member was a determining factor in the council's decision to not reappoint Mowery, which under the jury instruction amounted to a termination. While there was evidence to

the contrary as well, it is the jury's duty to resolve factual questions, and the jury is free to believe or disbelieve the witnesses' testimony. *Est. of Hagedorn v. Peterson*, 690 N.W.2d 84, 88 (Iowa 2004) ("[T]he credibility of witnesses is peculiarly the responsibility of the fact finder to assess.").

The court did not err in denying the defendants' motion for JNOV on the claim of discharge in violation of public policy.

***B. Breach of Contract.*** The defendants make a three-fold attack on Mowery's breach-of-contract claim. First, they assert the letter of understanding is not a contract by its own terms. Second, they contend the letter of understanding is void as against public policy. Third, because Mowery was not "terminated" there was no breach of contract. We have already addressed the third claim above and have concluded there is substantial evidence from which the jury could find Mowery was terminated. We turn to the other challenges.

*1. Contract.* The defendants state, "[T]here can be no breach of contract claim because, by its own terms, the Letter of Understanding was not a contract." Thus, they maintain a breach-of-contract claim fails "as a matter of law." This argument is circular and omits crucial terminology in the letter of understanding.

There is no doubt the letter of understanding clearly states it is not a contract *for employment*. But Mowery does not claim it is; rather, she asserted the letter of understanding was a contract which set forth the terms of a severance package to be paid to her if she lost her position of city clerk without just cause. She testified she "considered the agreement to cover my severance package in the event that I was no longer working for the City of Carter Lake due to no improper actions upon my part." Mowery testified, "I promised I would come and do my best job, and they

promised to pay me a severance package if something happened that I had no control over." Kramer testified the purpose of the 2012 letter of understanding was to provide Mowery protection and benefits should she be terminated for "anything . . . not for just cause."

Whether a contract existed was a question of fact for the jury. *See Davenport Bank & Tr. Co. v. State Cent. Bank*, 485 N.W.2d 476, 479–80 (Iowa 1992). The jury was instructed:[8]

> To establish her claim for breach of contract, the Plaintiff must prove all of the following propositions:
> 1. The parties were capable of contracting.
> 2. The existence of a contract.
> 3. The consideration.
> 4. The terms of the contract.
> 5. The Plaintiff has done what the contract requires.
> 6. The Defendants breached the contract.
> 7. The amount of damages caused by Defendants' breach of the contract.

---

[8] Further clarification of the nature of Mowery's claim is included in Instruction No. 21:

> Plaintiff claims that the Letter of Understanding which was entered into with the City of Carter Lake and approved by the Carter Lake City Council on May 21, 2012 was legally binding on the City of Carter Lake through Promissory Estoppel. For Plaintiff to establish her claim of Promissory Estoppel, she must prove all of the following elements:
> 1. A clear and definite promise.
> 2. The promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely without which she would not act.
> 3. The promise acted to her substantial detriment in reasonable reliance on the promise.
> 4. Injustice can be avoided only by enforcement of the promise.
> If Plaintiff has proven all of these propositions, then the Letter of Understanding becomes legally enforceable and you may use the *Letter of Understanding to determine the monetary value of Plaintiff's severance package.*

(Emphasis added.)

The jury specifically found the letter of understanding was a contract between Mowery and Carter Lake; Carter Lake breached the contract with Mowery; and the city's breach caused damage to Mowery. We find no reason to disturb the jury's findings.

*2. Void as against public policy.* The defendants next assert the letter of understanding, if a contract, is void as against public policy. They state, "The Iowa Supreme Court has continually held that a contract which contemplates the payment of more or less salary than that specified by law is against public policy." The defendants cite to two cases: *Du Bois v. City of Oskaloosa*, 294 N.W. 302, 304 (Iowa 1940), and *Miller v. Marshall County*, 641 N.W.2d 742, 751 (Iowa 2002). We find neither case provides authority for the defendants' claim.

In *Du Bois*, "the amount of compensation and the time or times for payment thereof for a public officer [we]re not determined from the contract of employment but solely from the legislative provisions applicable to the payment of such compensation." 294 N.W. at 303. Consequently, the supreme court found the city's attempt to pay a city health officer less than the statutorily-mandated salary was void. *Id.* at 304 (noting "[i]t is a general principle that a municipal contract entered into in violation of a mandatory statute, or a contract in opposition to public policy, is not merely voidable but void").

At issue in *Miller* were explicit limits on the county's authority to enter into a lease and lease-purchase agreements under Iowa Code 331.301 (1993). *See* 641 N.W.2d at 746. The supreme court ruled:

> The principal amount of the payments in the ten-year lease agreement between the Board and Miller exceeded the $500,000 limit on Marshall County's authority to enter into lease agreements.

Because the Board failed to follow the requisite statutory procedures triggered by the lease terms, the Board did not have the authority to enter into the contract with Miller. Consequently, the contract was void and unenforceable.

*Id.* at 751 (citation omitted).

In Mowery's case, Carter Lake Municipal Code section 20.01 provides: "The Clerk shall receive such compensation as established by resolution of the Council." That city ordinance refers to Iowa Code section 372.13(3), which in turn states: "The council shall appoint a city clerk to maintain city records and perform other duties prescribed by state or city law." Iowa Code section 372.13(4) states, in part, "[e]xcept as otherwise provided by state or city law, the council may appoint city officers and employees, and prescribe their powers, duties, compensation and terms." The city council had the authority to set Mowery's compensation and did so. The types of statutory limits on municipal authority addressed in *Du Bois* and *Miller* are not present here. Because the defendants have provided no authority for their claim the contract is contrary to public policy, the claim fails.

***C. Promissory Estoppel.*** The defendants challenge the court's denial of JNOV of the promissory estoppel findings on two grounds. First, "The promises made in the Letter of Understanding were only applicable if Plaintiff was 'terminated'. . . Plaintiff was not in fact 'terminated.'" Second, they contend the exceptional circumstances necessary to invoke promissory estoppel against a government agency do not exist here. We refer back to our discussion finding substantial evidence supporting the jury's finding Mowery was "terminated."

Our supreme court has identified four elements of promissory estoppel:

(1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an

assurance upon which the promisee could rely and without which [the promisee] would not act; (3) the promisee acted to [the promisee's] substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Kunde v. Est. of Bowman*, 920 N.W.2d 803, 810 (Iowa 2018) (quoting *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 49 (Iowa 1999)).  A claim of promissory estoppel focuses on the elements of "a promise and reliance, rather than agreement and consideration."  *Id.*

> "We have consistently held equitable estoppel will not lie against a government agency except in exceptional circumstances."  We have explained that "[a] person seeking to invoke the doctrine of equitable estoppel against a government body 'bears a heavy burden, particularly when the government acts in a sovereign or governmental role rather than a proprietary role.'"  The "exceptional circumstances" under which equitable estoppel will lie against the government include instances when, "in addition to the traditional elements of estoppel, the party raising the estoppel proves affirmative misconduct or wrongful conduct by the government or a government agent."

*Fennelly v. A-1 Mach. & Tool Co.*, 728 N.W.2d 163, 180 (Iowa 2006) (citations omitted).

Mowery observes that in denying the defendants' motion for summary judgment, the court determined the question of whether exceptional circumstances existed presented a jury question.[9]  The defendants contend there are no exceptional circumstances here to justify submitting the estoppel claim to the jury,

---

[9] The district court wrote "no Iowa cases clearly illustrate the 'exceptional circumstances' required to apply equitable estoppel to municipalities."  *Chamberlain, L.L.C. v. City of Ames*, No. 06-1487, 2007 WL 4322186, at *4 (Iowa Ct. App. Dec. 12, 2007).  However, the court observed equitable estoppel will be applied "where the interests of justice, morality, and common fairness clearly dictate that course."  28 Am. Jur. 2d, *Estoppel and Waiver* § 140 (2018).

citing *Bailiff v. Adams County Conference Board*, 650 N.W.2d 621, 626–27 (Iowa 2002). We find *Bailiff* distinguishable. There, "the conference board was clearly acting in its governmental role *in compliance with the statutory duties* assigned to it." *Bailiff*, 650 N.W.2d at 626–27 (emphasis added). Here, however, the jury found the defendants were acting contrary to public policy.

Our supreme court has observed, "[T]here is nothing about the employment-at-will relationship itself that precludes reliance on a theory of promissory estoppel." *Schoff*, 604 N.W.2d at 49. The jury made specific findings that the defendants wrongfully discharged Mowery and her failure to "to pay dual compensation to Councilwoman Mary Schomer" was "a determining factor for her termination." Moreover, the jury specifically found: (1) there was "a clear and definite promise made to Doreen Mowery in the Letters of Understanding"; (2) Carter Lake understood "Mowery was seeking an assurance upon which she could rely and without which she would not act"; (3) Mowery reasonably relied on the promises made to her in the letter of understanding; (4) Carter Lake broke the promises made to Mowery in the letter of understanding; and (5) Mowery suffered damages caused by the city breaking its promises to her in the letter of understanding. We affirm the court's denial of the defendants' JNOV motion.

**D. Remittitur.** Finally, the defendants maintain the trial court abused its discretion in denying their motion for remittitur, claiming the jury has awarded duplicative damages. They contend the trial court should have reduced Mowery's damages by the $73,424.00, which the jury awarded for back pay, under the theory the promissory estoppel claim was duplicative of the past lost wages the jury awarded for the claim of wrongful discharge.

In her appellate brief, Mowery argues the jury's award "flows from the argument that was consistently championed by these defendants throughout the trial: The City Clerk position is an appointed position and the term of the appointment is for two years."

> On this record, the jury found that Mowery was wrongfully discharged in violation of public policy on January 18, 2016. Were it not for that wrongful conduct, she would have remained the City Clerk for another two years, until the first council meeting in January 2018. The severance package compensated her for her losses during the ***first year*** of what would have been another two-year city clerk appointment. The jury decided to award her another $65,000 in lost wages for that ***second year*** following her wrongful termination. The jury likely did not match the severance package in its award for past lost wages under the retaliatory discharge claim because Mowery testified that she had earnings in various substitute employment opportunities that she pursued during those two years and the jury could have reasonabl[y] given credit to the Defendants by reason of Mowery's mitigation of damages.

This claim on appeal is contrary to Mowery's position at trial. During closing argument, Mowery's counsel stated:

> And the measure of damages for the promissory estoppel theory is set forth in Instruction Number 22, and it's just the severance package. It's the severance package that is set forth in Paragraph 6 of this agreement (indicating), this agreement. She'll be granted [twelve] months' severance pay, severance package to include full pay, reimbursement for unused vacation and sick pay, complete benefits of health, dental, vision and life insurance. That's set forth in Instruction Number 22. That's the measure of damages for the promissory estoppel theory.

Exhibit 42 is Mowery's calculation of what was owed under the severance package. Mowery testified she worked 8.5 hours on January 18, 2016, and

calculated her current hourly rate of pay was $35.30.[10]  She testified under the compensation package her wages for one year were $73,424.

In *Jasper*, the supreme court observed:

> Wrongful discharge of employment in violation of public policy is an intentional tort in Iowa.  The legal remedy provided for victims of the tort covers the complete injury, including economic loss such as wages and out-of-pocket expenses, as well as emotional harm.  Emotional harm is a personal injury, and economic loss constitutes property damage.  Thus, both personal injury and property damage are recoverable.

764 N.W.2d at 769–70 (internal citations omitted).

"A remittitur may be appropriate when . . . the jury's damage award was not justified by the evidence before it."  *WSH Props., L.L.C. v. Daniels*, 761 N.W.2d 45, 52 (Iowa 2008).  The jury awarded damages for promissory estoppel as provided in the letter of understanding, which included $73,424 in "back pay for twelve months."  Additionally, for wrongful discharge the jury awarded $65,000 in "back pay from January 18, 2016 to present."  There is no evidentiary basis for back pay damages in excess of the $73,424.  A remittitur is appropriate.

**IV. Disposition.**

We affirm on all issues except remittitur, and we conditionally affirm the trial court's denial of the defendants' motion for new trial.  If, within fifteen days of the issuance of procedendo, the plaintiff files with the clerk of the district court a remittitur of all of the judgment in excess of $206,285.61, the judgment of the district court shall be affirmed; if the plaintiff does not file a remittitur, the district

---

[10] This appears to be the rate of pay she used to calculate her wages: the product of $35.30 per hour, forty hours per week, and fifty-two weeks in a year, equaling annual pay of $73,424.  Under her 2012 compensation package, Mowery's annual salary was $68,500 but contemplated pay increases annually.

court shall set the case for a new trial.  *See WSH Props., L.L.C.*, 761 N.W.2d at 53.

**AFFIRMED ON CONDITION AND CASE REMANDED.**